Sterling Acceptance Co., Appellant, *v.* Grimes.

Argued November 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

R. *Clifton Hood,* with him *Evans & Hood,* for appellant.

*H. Beryl Klein,* for appellee.

OPINION BY WOODSIDE, J., March 22, 1961:

Sterling Acceptance Company brought an action in replevin with bond against Patrick Grimes, Jr. and George Homish to obtain possession of a 1958 Dodge automobile which Grimes had purchased new from Homish, a dealer. The acceptance company claimed the automobile because of an encumbrance in its favor placed upon a dealer's certificate of title issued to Homish. When the case was tried, the court directed the jury to bring in a verdict in favor of Grimes, but allowed it to determine the value of the automobile at the time it was replevied. The jury awarded Grimes $3300. After motions for judgment n.o.v. and for a new trial were refused by the court below, the acceptance company appealed from the entry of judgment against it for the above sum.

Homish, who traded as Homish Sales & Service, was an automobile dealer in Aliquippa, Beaver County, for approximately 40 years. On May 29, 1958, he sold Grimes a new 1958 Dodge automobile for which Grimes paid him the sale price in full, including the sales tax and the fee for registration of the title. Grimes paid Homish $2060 in cash and transferred to Homish title to a 1955 Dodge automobile for which he was given an allowance of $1636.14. Possession of the

new Dodge was given to Grimes. An application for title to the new car was signed by Grimes and given to Homish for mailing to the Bureau of Motor Vehicles in Harrisburg. The purchase of the automobile by Grimes was made from Homish's inventory in the ordinary course of Homish's business at his place of business in Aliquippa. When the certificate of title did not arrive, Grimes contacted Homish several times, and was told that the delay was caused by the authorities in Harrisburg. Finally, after frequent evasions, Homish told Grimes that he was in financial difficulties, and that he had not mailed the application for the certificate of title.

Over two years prior to the sale of the Dodge to Grimes, a Blanket Security Agreement was filed by the acceptance company in the office of the Prothonotary of Beaver County. The agreement covered a security interest of the plaintiff in the sale of all new and used vehicles by Homish. This agreement was filed in compliance with §9-302 of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A P.S. §9-302.[1] The agreement provided, inter alia, that "the following (proceeds) (products) of the property are also covered: Proceeds of sale of all motor vehicles covered by this statement, including money, chattel paper and motor vehicles received in trade."

In addition to the above agreement, Homish executed and delivered to the plaintiff a Trust Receipt Security Agreement which describes the automobile which is the subject of this suit. To this agreement is attached a judgment note for $2614.14 in which Homish is obligor and the acceptance company is payee. The latter agree-

---

[1] Numerous amendments were made to the Code by the Act of October 2, 1959, P. L. 1023, but these are not relevant to the transactions involved in this case because they became effective subsequent to such transactions.

ment contains, inter alia, the following: "Debtor further agrees to hold the Goods for the sole purpose of processing or preparing them for sale, and of selling them; . . . that its right to sell any item of Goods is limited to a sale to a buyer in the ordinary course of business and for a price not less than the then unpaid balance of the Note which is applicable to said item; that on the same day Debtor sells any such item, (i) it will pay Co. an amount equal to the then unpaid principal balance of the Note applicable to the item, or (ii) if Co. requests, it will turn over to Co. the proceeds of sale, in precisely the form received, and transfer the same to Co. . . .

"In addition to all rights provided for herein, Co. shall have rights with respect to the Goods, and the proceeds thereof, which are provided for in the Uniform Commercial Code (Pa.)."

The acceptance company also had Homish make application to the Bureau of Motor Vehicles for a dealer's certificate of title to the automobile in question. The certificate was duly issued in the name of Homish and had noted thereon an encumbrance in favor of the acceptance company in the amount of $2614.14. It will be noted that the certificate of title was a "DX" certificate which is issued to a dealer, not an "A" certificate normally issued to a purchaser of a new vehicle. This certificate was kept in the possession of the acceptance company as security.

The above recited facts are undisputed and most of them appear by way of documentary evidence.

Article 9 of the Uniform Commercial Code, supra, deals with secured transactions including liens on personal property intended to be sold in the ordinary course of business. Section 9-307, 12A P.S. §9-307 provided: "(1) In the case of inventory, and in the case of other goods as to which the secured party files a financing statement in which he claims a security in-

terest in proceeds, a buyer in ordinary course of business takes free of a security interest even though perfected and even though the buyer knows of the terms of the security agreement."

Section 2-403, 12A P.S. §2-403 provides, inter alia: ". . . (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. (3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." In the Comment on this section it is said in 12A P.S. §2-403: "The many particular situations in which a buyer in ordinary course of business from a dealer has been protected against reservation of property or other hidden interest are gathered by subsections (2)-(4) into a single principle protecting persons who buy in ordinary course out of inventory. Consignors have no reason to complain, nor have lenders who hold a security interest in the inventory, since the very purpose of goods in inventory is to be turned into cash by sale."

In the recent case of *Weisel v. McBride*, 191 Pa. Superior Ct. 411, 156 A. 2d 613 (1959), we had occasion to review a sale from inventory of an automobile for which the purchaser was unable to obtain a certificate of title, because the dealer had fraudulently used the certificate to obtain additional financing. Judge HIRT, speaking for this Court, said on p. 414: "The instant case presents one of 'the many situations' in which the Commercial Code intends to protect 'persons who buy in ordinary course out of inventory' . . ."

According to the comment on §9-307 (Purposes of Changes 2) of the Uniform Commercial Code, supra,

"The theory is that when goods are inventory or when proceeds are claimed the secured party contemplates that his debtor will make sales, and so the debtor has effective power to do so, even though his buyers know the goods they buy were subject to the security interest."

Under the provisions of the Uniform Commercial Code, supra, the plaintiff must look to Homish for repayment of the loan it made to him, and not to the automobile in the possession of Grimes, who paid the full purchase price to Homish.

It is the contention of the appellant that the Uniform Commercial Code, supra, does not apply to this transaction. It bases this contention upon §9-302(2)(b) of the code 12A P.S. §9-302(2) (b) which provided, inter alia, "(2) The filing provisions of this Article do not apply to the assignment of a perfected security interest, or to a security interest . . . (b) in property subject to a statute of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property. Compliance with any such statute is equivalent to filing under this Article."

The Vehicle Code[2] of May 1, 1929, P. L. 905, provided in §203(b), as last amended by the Act of May 18, 1949, P. L. 1412, 75 P.S. §33—replaced volume, as follows: ". . . The outstanding certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, subsequent mortgagees, lienors, encumbrancers and purchasers that a lien against the motor vehicle, trailer, or semi-trailer exists, and failure to transfer possession of the vehicle . . . shall not invalidate said lien or encumbrance."

---

[2] This code is replaced by The Vehicle Code of April 29, 1959, P. L. 58, which does not relate to the transactions here involved because it became effective after they transpired.

In certain particulars, including those which relate to this case, the Uniform Commercial Code, supra, and The Vehicle Code, supra, deal with the same subject matter, and when statutes are in pari materia they should be considered concurrently whenever possible. If they can be made to stand together, effect should be given to both as far as possible. *First National Bank of Millville v. Horwatt,* 192 Pa. Superior Ct. 581, 586, 162 A. 2d 60 (1960).

Considering these statutes together, we are of the opinion that upon the sale of a new automobile by a dealer in ordinary course of business, the buyer takes free of a security interest even though perfected, and even though the buyer knows of the terms of the security agreement. See §9-307 of the Uniform Commercial Code, supra.

Section 201(b) of The Vehicle Code of 1929, supra, 75 P.S. §31(b)—replaced volume, as amended, provided that dealers were not required to obtain certificate of titles for new motor vehicles until and before sale thereof.[3] We believe that the legislature did not intend to have the rights of buyers of new automobiles set forth in the Uniform Commercial Code defeated by lien creditors of the dealer, through the noting of encumbrances upon dealer's certificates of title which were not required and generally were not issued.

If the appellant's contention is correct, before the buyer of a new motor vehicle could safely pay the dealer for it, he would be forced to determine from Harrisburg whether the dealer had gratuitously secured an unnecessary certificate of title on which an encumbrance was placed. This is a requirement so impractical as to be unreasonable, and presumably one which the legisla-

---

[3] A similar provision can be found in §201 of The Vehicle Code of April 29, 1959, P. L. 58, 75 P.S. §201.

ture did not intend. See Statutory Construction Act of May 28, 1937, P. L. 1019, §52(1), 46 P.S. §552.

The purchaser of a used automobile knows that a certificate of title has been issued for the automobile and expects to have it produced at the time of sale, but the purchaser of a new vehicle expects no such certificate to exist.

The appellant contends that *Friedman v. Steibel*, 185 Pa. Superior Ct. 100, 138 A. 2d 205 (1958) and *Mellon National Bank & Trust Co. v. Cabin*, 177 Pa. Superior Ct. 417, 110 A. 2d 888 (1955) govern this case. Both of these cases involved used vehicles upon which certificates of title were issued as required by The Vehicle Code. Unfortunately, the *Friedman* opinion does not make it clear that the vehicle involved was a used one, but a reference to the record will show this to be true.

In directing the verdict for Grimes and submitting to the jury the question of the value of the automobile, the trial judge read from the declaration of policy set forth in the Motor Vehicle Sales Finance Act of June 28, 1947, P. L. 1110, §2, 69 P.S. §602 et seq. This was a superfluous reference relating primarily to the reason for his directing a verdict in favor of Grimes. Upon reading the whole charge, we are satisfied that the trial judge's reading of this statutory provision on Commonwealth policy did not prejudice the appellant on the narrow issue of the vehicle's valuation, and does not warrant the granting of a new trial.

Judgment affirmed.