## Associates Discount Corporation *v.* Old Freeport Bank, Appellant.

Argued March 15, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Alice Dobson,* with her *Abraham Fishkin,* for appellant.

*Donnell D. Reed,* with him *Gerard H. Hamilton,* for appellee.

*William H. Wood, J. Colvin Wright,* and *William A. Schnader,* Pennsylvania Commissioners on Uniform State Laws, for amicus curiae.

OPINION BY MR. JUSTICE COHEN, June 24, 1966:

Appellant, Old Freeport Bank (Bank), loaned money to Hood Motors, Inc. for the purpose of financing the purchase of new automobiles by Hood (Dealer). In addition to a trust receipt security agreement, these loans were secured by DX or dealer titles which were

issued for each automobile financed. On each such title an encumbrance was noted in favor of Bank. One such automobile was sold by Dealer to a buyer (Buyer) who made a cash payment and executed a bailment lease security agreement obligating himself to pay the sum of $2,101.20 to Dealer in liquidation of the balance of the purchase price.

Dealer sold the bailment lease for $1775 to Associates Discount Corporation (Discounter), a company in the business of buying chattel paper from dealers. Discounter took possession of the bailment lease in the ordinary course of its business, paid Dealer for the lease by check, which check Dealer turned over to Bank with instructions to deliver the DX title covering the sold automobile to Discounter so that a new title could be obtained. Bank refused to turn over the DX title to Discounter and instead used the DX title as a lever to induce Buyer to execute a second bailment lease in favor of Bank. Bank then required Buyer to make payments in liquidation of the second bailment lease to it rather than to Discounter under the bailment lease Discounter had purchased from Dealer.

There is no evidence that any security agreements were ever filed or perfected.

Bank urges upon us that the check for $1775 (which was drawn by Discounter and which was delivered by Dealer to Bank) was credited by Bank to other obligations owed by Dealer to Bank and therefore that it had a right to hold the title to secure the indebtedness of the Dealer due Bank arising out of the inventory-financed automobile. However, if the payments made by Buyer to Bank should have been made to Discounter and Bank has no claim to such payments, equity will declare Bank a constructive trustee of such funds to hold them for Discounter. *Dubin Paper Company v. Insurance Company of North America,* 361 Pa. 68, 85-86, n.4, 63 A. 2d 85, 94, n.4 (1949).

When Buyer purchased the automobile in the ordinary course of business, he took free of the Bank's lien[1] even though Bank had noted its security interest on the DX title, *Sterling Acceptance Co. v. Grimes*, 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961). As was stated in the amicus brief filed in this case: "The policy in favor of free purchase by ordinary consumers from dealers which is fundamental in a credit economy and which underlies Section 9-307 of the Code would be seriously circumvented by any other result."

Even though Bank lost its lien by Dealer's sale to Buyer, Bank retained a security interest in the proceeds of the sale.[2] Thus, the inventory financer [the Bank in this case] does not suffer by the loss of its security interest in the collateral. Part of the proceeds of the sale was a bailment lease or chattel paper[3] which Dealer sold to Discounter. This sale of the chattel paper to Discounter operated to deprive Bank of its security interest in the chattel paper, since the sale complied with §9-308.[4] Thus again the security interest

---

[1] "(1) A buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §9-307, as amended, 12A P.S. §9-307 (Supp. 1965).

[2] "(2) Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale . . . and also continues in any identifiable proceeds including collections received by the debtor." 12A P.S. §9-306(2) (Supp. 1965).

[3] "(b) 'Chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or a series of instruments, the group of writings taken together constitutes chattel paper. . . ." 12A P.S. §9-105(1)(b) (Supp. 1965).

[4] "A purchaser of chattel paper who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in chattel paper which is claimed merely as proceeds of inventory subject to a security interest (§9-306),

of Bank was shifted, this time to the proceeds of the sale of the chattel paper to Discounter. Section 9-308 became operative since the check given by Discounter to Dealer was new value,[5] Discounter had taken possession of the chattel paper and the transaction was the type of transaction which was in the ordinary course of its business.

The notation on the DX title made by Bank did not prevent the loss of Bank's security interest in the chattel paper just as it did not prevent the loss of Bank's security interest in the automobile.

The amicus brief filed in this matter clearly points out: "The DX title notation is not relevant to the chattel paper security interest and a purchaser of the paper who satisfies the requirements of Section 9-308 thus prevails over the inventory financer, while the inventory financer becomes entitled to the proceeds of the sale of the chattel paper. The action of [Bank] in obtaining a second bailment lease from [Buyer] in no way improves [Bank's] position."

Hence, Bank, having neither a security interest in the chattel paper nor in the automobile and having no other right against Buyer, could not hold as against Discounter the payments made to Bank which properly should have been made to Discounter. Equity will therefore deem Bank a constructive trustee for Discounter to the extent of the payments it received. Bank is such a constructive trustee regardless of whether or not it applied the proceeds of the chattel paper, namely, the check for $1775, to the specific security interest it had in the automobile or to the general account of Dealer,

---

even though he knows that the specific paper is subject to the security interest." 12A P.S. §9-308 (Supp. 1965).

[5] "New value" is partially defined in §9-108 as making an advance, incurring an obligation or releasing a perfected security interest. 12A P.S. §9-108 (Supp. 1965).

or, indeed, regardless of whether or not it even obtained the said check.

Decree affirmed. Costs on appellant.