## Bozzo v. Key Mobile Homes, Inc.

*Renato S. DeLucca*, for James J. Bozzo.
*Kenneth W. Richmond*, for General Electric Credit Corporation.
*Samuel Glantz*, for David Matthew.

GARB, *J.*, November 28, 1978—We decide herein the objections of Charles Bozzo, executor of the estate of James J. Bozzo, hereinafter called Bozzo, and General Electric Credit Corporation, hereinafter called General Electric, to the determination by the sheriff of Bucks County in favor of claimant, David Matthews, hereinafter called Matthews, a property claimant in a sheriff's execution. The sheriff had issued execution as a result of praecipes for execution issued by Bozzo and General Electric upon the property of Key Mobile Homes, Inc., hereinafter called Key. Included in the property executed upon was a certain 1972 Amhurst Mobile Home, serial number 5157, which has been claimed by Matthews. It is this claim which was determined affirmatively to Matthews by the sheriff and to which objection is taken herein.

James J. Bozzo was the landlord of Key under and pursuant to a certain lease containing a confession of judgment clause. Judgment was taken as a result of a default in payment of rent and execution issued thereon by Bozzo on June 30, 1978. On the same date execution was issued against Key in favor of General Electric as a result of a judgment it likewise had secured against Key. As noted, among

the items levied upon was the aforesaid 1972 Amhurst Mobile Home. Matthews had purchased the said mobile home from Key on August 17, 1977, for the purchase price of $6,320 which he paid in full. At the time of the said purchase the mobile home was offered for sale by Key as a retail dealer and was exhibited upon Key's lot at the time it was offered for sale. Matthews was a bona fide purchaser in good faith.

At the time that Matthews purchased the said mobile home actual title was in the name of General Electric and the certificate of title reflected that fact. The title held by General Electric was not assigned by it at any time relevant hereto.

Both Bozzo and General Electric have objected to the sheriff's determination in favor of the claim made by Matthews. We perceive that Bozzo has abandoned his objection, he having filed no brief in support of his contention herein.

We are satisfied that the sheriff's determination in favor of Matthews was correct and that Matthews must be determined to be the owner of the said mobile home in these proceedings.

We believe that section 9-307 of the Uniform Commercial Code of October 2, 1959, P.L. 1023, sec. 9, 12A P.S. §9-307, controls the result in this case. Subsection 1 of this section provides in relevant part that a buyer in the ordinary course of business takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. The term "buyer in ordinary course of business" is defined in section 1-201 of the Uniform Commercial Code as a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a

third party in the goods, buys in the ordinary course from a person in the business of selling goods of that kind. There is no suggestion that Matthews is not a buyer in good faith and it is likewise unchallenged that Key was in the business of selling mobile homes. The mobile home in question was purchased from Key's lot where it was exhibited for sale in the ordinary course of business. There might appear to be a conflict between the definition of "buyer in ordinary course of business" as contained in section 1-201 because by definition it must be a sale *without his knowledge that it is in violation of the ownership rights or security interest of a third party,* and section 9-307 specifically providing that a buyer in the ordinary course of business takes free of any security interest created by his seller *even though the security interest is perfected and even though the buyer knows of its existence.* In this situation, we are satisfied that section 9-307 must control because it specifically defines the rights of the parties involved in such a transaction. Furthermore, we would note that the certificate of title in this case[1] does not reflect that General Electric had a lien on this particular trailer but rather that General Electric is shown as in title thereto. Of interest is the fact that General Electric is shown on the certificate of title to be located in Cherry Hill, New Jersey, while Key from whom Matthews purchased the mobile home, was located at that time in Fairless Hills, Bucks County, Pa.,[2] where the trailer was displayed at his lot.

---

1. There is no evidence in this case to show that Matthews was ever aware of the nature of the certificate of title.

2. Of further interest the certificate of title in question describes the particular mobile home as a 1972 Derose. In the

Essentially, we do not really know what the nature of the claim of General Electric is to this mobile home other than as an execution creditor. It must be remembered that this is not an action in replevin. If the goods, in this case this mobile home, were in fact owned by General Electric then an action in replevin would lie and there would be no need to issue execution as a result of the entry of the judgment. If the goods were entrusted to Key as in the nature of a consignment, then under the provisions of section 2-403 of the Uniform Commercial Code Matthews would still be entitled to take and receive good title. By any view, as we see it, by virtue of section 9-307 of the code, Matthews, as a buyer in the ordinary course of business, takes good title by virtue of his good faith purchase and payment of the purchase price.

General Electric contends that somehow it is entitled to a superior interest by virtue of the provisions of the Mobile Home Titling Act of July 25, 1977, P.L. 95, 68 P.S. §1001 et seq. Clearly that act provides for the titling of mobile homes. Section 1002 thereof essentially contains the legislative history and the raison d'etre of the legislature in enacting the act. As set forth therein, inter alia, the reasons for the enactment of this act were to title mobile homes consistently with The Vehicle Code application to other vehicles, to permit security interests to be perfected essentially to encourage financing of the purchase of said homes because of the public policy of Pennsylvania to encourage and

---

stipulation of facts the mobile home is described as an Amhurst. We assume that the parties are in agreement, however, that the mobile home in question is the same as that purportedly identified by the certificate of title describing it as a 72 Derose.

support the housing industry of this Commonwealth. The pivotal provision of the act, so far as applicable to the matter before us, is section 1004 which provides:

"Every owner of a mobile home which is in this Commonwealth and for which no certificate of title or ownership has been issued by the department or any public or private agency shall make application to the department for a certificate of title or ownership. No mobile home may be sold or otherwise have the ownership thereof transferred without the proper transfer of the certificate of title."

It should be noted that nowhere in this section or in any other section of this act is there provision for the acquisition of rights in a security holder superior to those or in derogation of those provided for in any other act of assembly. Specifically, nothing in this act indicates a specific provision or a legislative intent to abrogate, repeal or supersede any of the provisions of the Uniform Commercial Code and particularly section 9-307. Therefore, we find no inconsistency between the Mobile Home Titling Act and section 9-307 of the Uniform Commercial Code. The Mobile Home Titling Act merely provides for titling of mobile homes and the availability, therefore, of establishing a security interest therein. Section 9-307 specifically contemplates such security interests but specifically provides that a buyer in the ordinary course of business takes free of such a security interest even though he may know of it.

We believe that the result we reach herein is consistent with the decisional law of this Commonwealth. In Associates Discount Corp. v. Old Freeport Bank, 421 Pa. 609, 220 A. 2d 621 (1966),

the Supreme Court held that when the buyer purchased the automobile in question in the ordinary course of business, he took free of the bank's lien even though the bank had noted its security interest on the title held by the dealer. The court relied upon the provisions of section 9-307 in achieving this result. The court stated that the policy of this Commonwealth is in favor of free purchase by ordinary consumers from dealers which is fundamental in a credit economy and which underlies the philosophy of section 9-307. " 'Section 9-307 of the Code would be seriously circumvented by any other result.' " Id. page 612. Acknowledging this, General Electric argues that there is a distinction between such a sale of a new and used vehicle. The vehicle in question in Associates Discount Corp. v. Old Freeport Bank, supra, was a new one while the mobile home in the case before us was a used one. General Electric argues that a distinction should be drawn between a new and used vehicle because in the case of a new vehicle in the hands of a dealer a title would not yet have been issued while everyone knows that a title must already have been issued in the case of a used vehicle. Although at first blush this distinction may appear to have some appeal, we do not believe it is supported by the law of the Commonwealth.

In support of its position General Electric relies on Sterling Acceptance Co. v. Grimes, 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961). It should first be noted that in that opinion the court was concerned with a new automobile purchased in good faith from a dealer. The title, however, was encumbered by a perfected security interest. The court, therefore, was called upon to construe the provision of The Vehicle Code providing for encumbering of title and section 9-307 of the Uniform

Commercial Code. The holding in that opinion was as follows: "Considering these statutes together, we are of the opinion that upon the sale of a new automobile by a dealer in ordinary course of business, the buyer takes free of a security interest even though perfected, and even though the buyer knows of the terms of the security agreement. See §9-307 of the Uniform Commercial Code, supra." General Electric relies upon the dictum of this opinion to the effect that the purchaser of a used automobile knows that a certificate of title has been issued for the automobile and expects to have it produced at the time of sale whereas the purchaser of a new vehicle expects no such certificate to exist. The opinion, therefore, suggests by way of dictum that a different result might ensue with regard to a used vehicle. We believe that this slim reed is not of sufficient strength to support the contention of General Electric.

First of all, as noted twice previously, General Electric places its reliance upon mere dictum in this opinion. Secondly, the court in Sterling was construing and integrating the effects of section 9-307 with §203(b) of The Vehicle Code of May 1, 1929, P.L. 905, as last amended prior to that opinion by the Act of May 18, 1949, P.L. 1412, 75 P.S. §33, providing in relevant part as follows:

" . . . The outstanding certificate of title when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, subsequent mortgagees, lienors, encumbrancers and purchasers that a lien against the motor vehicle, trailer, or semi-trailer exists, and failure to transfer possession of the vehicle . . . shall not invalidate said lien or encumbrance."

Obviously, that provision of the then extant Vehicle Code was far different and significantly more specific regarding the rights of creditors and purchasers than is the language of the Mobile Home Titling Act upon which General Electric relies. No such language or language even remotely similar is to be found in the Mobile Home Titling Act.

Additionally, in support of that dictum, the court in Sterling relied upon Friedman v. Steibel, 185 Pa. Superior Ct. 100, 138 A. 2d 205 (1958), and Mellon National Bank & Trust Company v. Cabin, 177 Pa. Superior Ct. 417, 110 A. 2d 888 (1955). Both of these cases are readily distinguishable and of questionable support of that dictum. Friedman v. Steibel, supra, was an action in replevin regarding a used vehicle but the court therein construed only section 203 of The Vehicle Code, essentially the same as the section as heretofore cited from Sterling Acceptance Co. v. Grimes, supra, but did not bother to consider the possible applicability of section 9-307 of the Uniform Commercial Code. Mellon National Bank and Trust Co. v. Cabin, supra, was an isolated sale of one used motor vehicle from an individual, not from a dealer, and therefore cannot be considered as being a sale in the ordinary course of business. Furthermore, as previously noted, in this case the title does not reflect an encumbrance, but rather ownership in General Electric.

Lastly, with regard to the viability of this dictum in Sterling we would note Main Investment Co. v. Gisolfi, 203 Pa. Superior Ct. 244, 199 A. 2d 535 (1964), wherein the Superior Court calls into question whether or not the dictum in Sterling is in fact a correct principle of law. Regardless of whether this dictum is a correct principle of law, as heretofore

indicated, we are satisfied that it does not control the result in the case before us. Therefore, we hold herein and will so order that the objections to the sheriff's determination are denied, dismissed and overruled, Matthews' claim is affirmed and upon appropriate application and payment of required fees he shall be afforded the proper certificate of title to the mobile home in question.

## ORDER

And now, November 28, 1978, it is hereby ordered, directed and decreed that the objections of Charles Bozzo, executor of the estate of James. J. Bozzo, and General Electric Credit Corporation to the determination by the sheriff that David Matthews is entitled to ownership of the 1972 Amhurst Mobile Home, serial number 5157 are hereby denied, dismissed and overruled, the sheriff's determination is affirmed and ownership of the aforesaid mobile home is declared to be in David Matthews. Upon proper application being made accompanied by the appropriate fees he shall be afforded and issued a proper certificate of title to the aforesaid mobile home.