In the Matter of PENNSYLVANIA CONVEYOR COMPANY, INC., Ridgway Industrial Park, Inc., Seneca International Tool Corporation, Mohawk Industrial Design Enterprises, Inc., Debtors.

KWIKSET DIVISION OF EMHART INDUSTRIES, INC., Plaintiff,

v.

MOHAWK INDUSTRIAL DESIGN ENTERPRISES, INC. and Pennsylvania Bank & Trust Company, Defendants.

Bankruptcy Nos. 80–00474, 80–00475, 80–00552 and 80–00553.
Adv. No. 80–0374.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 20, 1982.

Thomas A. Donovan and Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Robert G. Sable and Lampl, Sable & Makoroff, Pittsburgh, Pa., for defendants.

Richard W. Mutzabaugh and Mutzabaugh, Mutzabaugh & Saunders, Bradford, Pa., trustee.

## MEMORANDUM AND ORDER ON ACTION FOR RETURN OF INVENTORY MANUFACTURED AND SOLD IN ORDINARY COURSE OF DEBTORS' BUSINESS

WILLIAM B. WASHABAUGH, Jr., Bankruptcy Judge.

The plaintiff, Kwikset Division of Emhart Industries, Inc., (Kwikset) entered into an agreement for the purchase from Mohawk Industrial Design Enterprises, Inc., defendant-debtor, (Mohawk) of a sixty-ton Johnson back-geared air clutch OBI press, with a customized coining package and feed system (Press) through an exchange of a Mohawk quotation dated April 9, 1979 as amended by a letter dated May 9, 1979 and a Kwikset purchase order dated June 9, 1979 for a price of $69,375.25. It paid the sum of $54,377.25 in compliance with the terms embodied in a letter of July 20, 1979, viz: $5,000 down payment on its acceptance of Mohawk's quotation, $34,000 ten days after Mohawk received the basic press for resale to Kwikset, and $15,377.25 on Mohawk's completion of the sizing package and the custom feeding system. The final installment of $15,000 is due thirty days after the press is shipped from Mohawk's plant which plaintiff has been ready and anxious at all relevant times to pay.

The Press was examined carefully from October 22–24, 1980 by Kwikset's James DeMass, who observed it for approximately eight hours of operating time in which it properly coined about 200 samples of different types. He advised Mohawk that the Press conformed to the agreement of sale and that Kwikset would take it. Only two minor adjustments were required: (1) the tightening of two loose bolts that held the die set on the Press, and (2) adjustment of the shock absorbers, but even without these adjustments the press operated properly except in connection with especially small components. We find from this testimony that the manufacture of the press is substantially complete and conforms and has been identified to the contract of sale.

Mohawk was a subsidiary and affiliate of Ridgway Steel Fabricators (Ridgway), the principal debtor in a related and simultaneously filed, now aborted, Chapter 11 case at No. 80–00553 in the within Court and had given the Pennsylvania Bank and Trust Company (PennBank) a perfected security interest in all of its inventory, accounts receivable, machinery and equipment and proceeds thereof having a balance of $1,986,453.73 prior to October 28, 1980 when the debtor filed the within application for relief under Chapter 11 of the Bankruptcy Act subsequent to Kwikset's agreement to purchase the press. In addition to the above security interests Mohawk and Ridgway gave PennBank a mortgage and judgment on all of its real estate which had fair market value of $500,000 as security for its $1,986,000 indebtednesses, the value of its equipment and other collateral having been approximately $1,000,000. PennBank repossessed the inventory and equipment at both Ridgway's and Mohawk's plants, including the press on October 27, 1980. The question is whether the plaintiff, Kwikset, can take title and right of possession to the press from PennBank on payment of the final installment of $15,000 on the purchase price free and clear of the security interest of PennBank under the provision of Section 9307 of the Pennsylvania Uniform Commer-

cial Code, or whether, as argued by Penn-Bank, it lost the right to do so because the seller became insolvent more than ten days after the receipt of the first installment of said price under the provisions of Section 2502.

Section 9307 of the Pennsylvania Uniform Commercial Code, 13 Pa.C.S.A. § 9307(a) provides the following:

"**§ 9307. Protection of buyers of goods**

"(a) Buyer in ordinary course of business.—A buyer in ordinary course of business (section 1201 [relating to general definitions]) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Section 2502 is as follows:

"**§ 2502. Right of buyer to goods on insolvency of seller**

"(a) General rule.—Subject to subsection (b) and even though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of section 2501 (relating to insurable interest in goods; manner of identification of goods) may on making and keeping good a tender of any unpaid portion of their price recover them from the seller if the seller becomes insolvent within ten days after receipt of the first installment on their price.

"(b) Identification made by buyer.—If the identification creating his special property has been made by the buyer he acquired the right to recover the goods only if they conform to the contract for sale."

PennBank's contention that Kwikset's rights in the Press are unenforceable against its security interest therein must be disapproved as Kwikset is a buyer of inventory in the ordinary course of business and

"takes free of a security interest even though the security interest is perfected and even though they buyer knows of its existence"

under the express provisions of Section 9307 of the Pa. Uniform Commercial Code entitled "Protection of buyers of goods" hereinabove quoted: *Holstein v. Greenwich Yacht Sales, Inc.,* 404 A.2d 842 (R.I.1979), 27 UCC Rep. 397; *Levine v. Ficke,* 5 UCC Rep. 1059, NY L.J.Dec. 6, 1968 page 17 (NY 1968); *Chrysler Credit Corp. v. Sharp,* 5 UCC Rep. 226, 56 Misc.2d 261, 288 N.Y.S.2d 525 (NY 1968) in none of which was it shown that the seller became insolvent within ten days of the receipt of the first installment of their price. See also *Associates Discount Corporation v. Old Freeport Bank,* 421 Pa. 609, 220 A.2d 621 (1966) in which a purchaser of an automobile from a dealer in the ordinary course of business took free and clear of a bank's lien noted on the certificate of title and *Sanders v. M.D. Aircraft Sales, Inc.,* 575 F.2d 1086 (3rd Cir.1978, Gibbons, J.) holding that under the provisions of the Federal Aviation Act to the effect that the validity of instruments required to be recorded thereunder shall be governed by the laws of the state in which the goods are delivered, and that under Pennsylvania law the buyer of an airplane in the ordinary course of business from a dealer in aircraft took title free and clear of a floor plan lien of a finance company which lent money to the dealer on the security of its inventory and the lien was transferred to the proceeds of sale. To the same effect is *Sterline Acceptance Co. v. Grimes,* 194 Pa.Super.Ct. 503, 168 A.2d 600 (1961).

In *In Re Hardwick & Magee Co.,* 11 UCC Rep. Service 1172 (Bcy.E.D.Pa., 1972) cases involving equipment left in the possession of the seller for a commercially unreasonable time rather than inventory sold in the ordinary course of the seller's business were distinguished from the inventory cases. The Court indicated that the result would have been different in *Hardwicke* if the seller had been a "merchant-seller" (i.e. a seller of inventory) rather than a mere seller of equipment, and it is on this ground that the cases in which lienors of equipment and other assets not constituting inventory sold in the usual course of business are permitted to prevail against the buyer thereof when the seller becomes insolvent

more than ten days after payment of the first installment of the purchase money and the goods have been left in his possession. There is no such exception to the unequivocal direction in Section 9307(a) of the Pa. Uniform Commercial Code quoted Supra applicable to purchaser of inventory that:

".... A buyer in ordinary course of business ..... takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

The purchaser in the instant case paid all but $15,000 of the $69,375.25 purchase price, the goods were identified to the contract and were left in the manufacturer's possession for the sole and only purpose of the making of two minor corrections and the shipping of the completed article.

IT IS ORDERED, ADJUDGED and DECREED for the foregoing reasons that the Johnson back-geared air clutch OBI press here in question shall be delivered by Penn-Bank, the within named defendant to the plaintiff, Kwikset Division of Emhart Industries, Inc., forthwith on tender of payment thereto of the remaining balance of the purchase money, to-wit, $15,000 without interest thereon.