566 So.2d 554 (1990)
Zois SHUTTIE, Appellant,
v.
FESTA RESTAURANT, INC., Festa Caterer's Inc., and Roberto Iglesias, Appellees.
No. 90-85.
District Court of Appeal of Florida, Third District.
August 14, 1990.
Shutts & Bowen, and Maxine M. Long, Kenny Nachwalter & Seymour and Scott E. Perwin, Miami, for appellant.
Carlos A. Lopez, Jr., Coral Gables, and Virginia M. Best, Fort Lauderdale, for appellees.
Jean S. Perwin, Miami, for the South Florida Art Center, Allied Arts of North Miami, Artifacts Artist Group, Bakehouse Art Complex, Inc., Florida Artists Group, Continuum Gallery, Inc., Women's Caucus for Art, Miami Chapter, and the Entertainment Arts and Sports Law Section of The Florida Bar, as amicus curiae.
Before BARKDULL, NESBITT and FERGUSON, JJ.
PER CURIAM.
The plaintiff appellant filed an action in Replevin to recover certain paintings. After the cause was at issue, the matter by agreement, was referred to a General Master. Following receipt of evidence and legal memorandum, the General Master rendered a Report which reads in part as follows:
"The following facts emerged without dispute:
Plaintiff Zois Shuttie was the artistic creator of the subject sixteen (16) paintings; as such, plaintiff was the original owner of the subject artwork.
One John Guggenheim, formerly a local art dealer, owned and operated "The Guggenheim Collection" (formerly known as "The Guggenheim Gallery") in an exclusive area of Coral Gables. Mr. Guggenheim was not made a party to this action and did not appear as a witness. The plaintiff first met Guggenheim in late 1986 at Cafe des Artes in Miami Beach. At that time Guggenheim had just opened a gallery at the Bakery Centre in South Miami, Florida. By expression or intended implication, Mr. Guggenheim appears to have led many local residents to believe he was a member of the Guggenheim family of New York City, nationally renown as patrons of the arts. Guggenheim, accordingly, received much local recognition and attention, publicly and socially, while falsely representing himself to be related to the famous art patrons. This reputation circulated widely among local residents, artists, patrons and critics.
Prior to Mr. Guggenheim's unanticipated, sudden disappearance from this community in 1988, neither the plaintiff-artist *555 nor Festa's representative, Roberto Iglesias knew or had reason to question Guggenheim's true identity or professional credentials.
Plaintiff testified that at the request of Mr. Guggenheim, possession of the subject paintings (together with others) was given to John Guggenheim in November 1986, July 1987 and again in August 1987. In each instance, possession was conferred upon Guggenheim as agent for the plaintiff for display and for sale on consignment in the "Gallery" (or "Collection"). There was no issue respecting Guggenheim's initial authority as Shuttie's agent, to sell all consigned paintings, including the subject pieces, at the prices originally agreed upon between plaintiff and Guggenheim.
The subject sixteen (16) specific paintings appear, among others, enumerated on plaintiff's Exhibits 1, 2, and 3. The specific sixteen (16) are also set forth by title and price on defendant's Exhibit 1.
Regarding Exhibits 1, 2, 3, the plaintiff testified that these abbreviated, single sentence sheets represent the written "consignment agreements" by which The Guggenheim Gallery (later Collection) undertook possession of subject paintings as his agent.
There are no other written terms of the consignment. All other terms of these consignment relationships were oral in nature or assumed to be generally understood by persons in the artist/art dealer business.
Plaintiff testified that the above described "consignments" to his agent Guggenheim carried full power for Guggenheim to convey title to each of the paintings to third parties.
Testimony of plaintiff indicated that neither he, nor to his knowledge, Guggenheim, affixed to any of the consigned works a sign or tag or other identifiable indicia which stated, alerted or otherwise provided notice to third persons that any of the artist's displayed work was being sold subject to a contract of consignment. Nor was any sign or notice posted which might generally so advise prospective purchasers.
Defendant Iglesias likewise testified that no such tag, sign, or other notice was affixed to any painting or otherwise generally posted advising him individually, or as representative of defendant Festa, of the consignment status and relationship between Shuttie and Guggenheim.
Defendant Iglesias, individually and as representative of Festa, testified that Guggenheim (whom he knew only as a socially prominent restaurant customer and as the reputed Gallery owner) approached him in late November 1987 and suggested that the subject sixteen (16) paintings be displayed in Festa restaurant. There would be no cost except the maintenance of insurance thereon. Should any customer wish to purchase a painting, such person would have been referred to Mr. Guggenheim at the Gallery. In the event a sale was consummated, Festa was to receive a twenty (20%) percent commission or fee based upon the sale price. No such sales or referrals ever occurred. The transfer and installation at Festa occurred on November 29, 1987 where said paintings yet remain.
According to testimony of defendants Iglesias and Festa, evidence of this transfer by Guggenheim to Festa is a two (2) page document dated November 29, 1987 on letterhead stationary of "The Guggenheim Collection" (Defendant Exhibit 1). That document lists sixteen (16) paintings by Zois Shuttie, showing a price for each. The document states: "The following works have been loaned by the Guggenheim Collection for display and possible sale". Signatures attesting the transaction by John C. Guggenheim (The Guggenheim Collection) and Roberto Iglesias (Festa Restaurant) appear. It also directs the maintenance of fire and theft insurance while the property remains in the possession of Festa.
Plaintiff's testimony, uncontradicted, was that the above transfer to Festa represented a violation of the terms of his "Consignment" to Guggenheim.
Mr. Iglesias testified without contradiction that Mr. Guggenheim represented to him that the sixteen (16) paintings were from his personally owned collections and *556 Iglesias had no knowledge to the contrary and believed the same. It is further noted that Mr. Iglesias had no knowledge of Mr. Shuttie, and indeed first met him on or about March 5, 1988, after Mr. Guggenheim had unexplainedly departed the Dade County, Florida area.
Plaintiff testified that he first learned that agent Guggenheim was violating the purported consignment terms as early as mid-November, 1987, upon information that certain of his paintings were being displayed without his permission in the Cafe des Artes on Miami Beach.
By letter dated November 22, 1987 Shuttie reflected his indignation and requested "... your returning them to me; thus keeping for your use only a few, upon a new consignment." No answer was received. On December 2, 1987, by letter, plaintiff declared "I have, therefore, decided to retrieve all of my paintings from your gallery ..." Guggenheim responded by letter of December 4, 1987, somewhat equivocally acknowledging Shuttie's discontent. A subsequent letter to Shuttie dated January 19, 1988 was of similar tenor.
Meanwhile, in reliance on its possession of the subject sixteen (16) paintings as and for security, Festa loaned Guggenheim the total sum of $25,000 ($4,000 mid-December 1987; $6,000 late December 1987; $15,000 January 8, 1988).
During the foregoing period, Shuttie further learned that three of his paintings were also being held in New York City by one Mr. Reynolds, as collateral for a $30,000 loan to Guggenheim.
On February 5, 1988, Guggenheim personally visited Shuttie's apartment and returned several paintings, evidenced by a receipt therefor. Shuttie's efforts to recover the consignments (including the three (3) held in New York City) assumed a more aggressive posture by February 24, 1988, through a moderately stated demand letter by his attorney, to Guggenheim.
At this late date, however, the horse was out of the barn, so to speak. In reasonable reliance upon Guggenheim's asserted and apparent ownership, Festa had received the subject paintings for display, advanced loans totaling $25,000 and was relying upon its possession thereof to secure said loans.
On March 3, 1988, during a final visit by Guggenheim to plaintiff's apartment to return some of the past consignments, Shuttie learned that the subject paintings were on display at Festa Restaurant.
On or about March 5, 1988 the plaintiff visited Festa where he was cordially received by the proprietor Roberto Iglesias. Although he identified himself as the artist, apparently no discussion occurred regarding return of the paintings. Subsequently, however, in discussing Shuttie's situation with Festa's attorney, Lopez, plaintiff's attorney Dervishi, learned of the $25,000 loan advance secured by the paintings and this replevin action ensued.

DISCUSSION
It is noted at onset that defendant Festa does not assert ownership rights to the subject paintings. Rather, Festa asserts only a security interest based upon Guggenheim's apparent and declared, if misstated, ownership coupled with the absence of any indicia to the contrary  either visibly or of record.
Shuttie, on the other hand, acknowledges that the paintings were freely delivered to Guggenheim's possession and custody, as his agent. At least initially this delivery was coupled with full authority in Guggenheim to confer title (and therefore, presumably, possession) of the paintings upon any third person of his selection. It is clear that there was no visible external indicia to alert, warn or otherwise apprise a third person of Shuttie's retained title/consignment arrangement.
The plaintiff was not without adequate means to have afforded ample protection to his creations, by simultaneously providing similar warning or notice to third persons. Fla. Stat. 686.502 expressly so provides:
`686.502 Consignment relationship; notice; proceeds of sales held in trust; contract requirements.  (1) Whenever a consignor delivers, or causes to be delivered a work of art to a consignee for the *557 purposes of sale, or exhibition and sale, to the public on a commission, fee, or other basis of compensation, the delivery to and acceptance thereof by the art dealer is deemed to be "on consignment"; and, with respect to the work of art, such consignee shall thereafter be deemed to be the agent of such consignor.
(2) Whenever a consignor delivers or causes to be delivered a work of art to a consignee, such consignor shall give notice to the public by affixing to such work of art a sign or tag which states that such work of art is being sold subject to a contract of consignment, or such consignee's place of business giving notice that some works of art are being sold subject to a contract of consignment.'
Neither of the above statutory precautions  either by Shuttie (consignor) or Guggenheim (consignee) were pursued.
Nor did the plaintiff comply with the mandatory "contract [consignment] Provisions" of Fla. Stat. 686.503. Standing alone, failure of compliance with F.S. 686.503 might not necessarily prove fatal to his cause. This is because had the mandatory public notice provisions of Fla. Stat. 686.502 been substantially complied with, no third person might then rely upon contrary ownership allegations of the consignor's agent.
Where, as here, a complete absence of compliance with respect to Chapter 686 occurs, in the presence of a relying third person without notice an artist may not obtain relief where he has failed to provide even minimal public notice.
Plaintiff seeks to rely upon sub-section (5) of Fla. Stat. 686.503 to establish
`... a priority in favor of the artist over the claims, liens, or security interest of the creditors of the art dealer, notwithstanding any provision of the U.C.C.' Fla. Stat. 686.503(5).
Such reliance is misplaced. Having either failed or overlooked compliance with sub-sections (1)-(4) of that Statute (Fla. Stat. 686.503) as well as the notice requirements of Fla. Stat. 686.502(2), the plaintiff is estopped to selectively rely upon only those portions of the controlling statutes which operate favorably while wholly disregarding those parts which may have contributed to his dilemna. As stated by the Third District Court of Appeals:
"... an invalidating irregularity may not be claimed and availed of in one instance and be overlooked or considered innocuous in another. The knife cuts both ways ..." City of Coral Gables v. Sackett, 253 So.2d 890, 896 (Fla. 3rd DCA 1971).
Legislative impetus for the 1986 enactment of Chapter 687 undoubtedly was to codify and extend by specific statutes a cohesive cloak of protection to the artistic community from the occasional commercial predator. In effecting this laudable goal, however, co-extensive statutory rights of notice to the good faith public were created with corresponding public rights of reliance. Chapter 686, Florida Statutes, was intended to be applied and interpreted as a comprehensive whole and not by utilization of selective sections or sub-sections. In this case, however, the record is utterly devoid of any semblance of compliance with Chapter 686 by the plaintiff.
Statutes aside, (1) Plaintiff placed his unmarked property in the hands of an agent with implicit if not express authority to sell same, relying largely for protection upon his misplaced trust; (2) after notice that the terms of "consignments" (or trust) were being violated, plaintiff permitted his defaulting agent to continue in possession of his property and to exercise ostensible ownership rights vis a vis bona fide third persons without actual or legal notice; (3) before cash loan advances were made, but subsequent to the plaintiff acquiring knowledge that his agent, Guggenheim, was violating his trust and the consignment terms, defendant, Festa, without notice or knowledge, made cash advances in reliance upon the apparent ownership and/or authority of Guggenheim  all of which might have been prevented by prompt and timely actions by the plaintiff.
For the foregoing reasons, inter alia, I find for the defendants on the merits of this action of replevin and recommend the *558 entry of judgment in accordance therewith."
After the filing of the Report, the trial court overruled the exceptions filed by the plaintiff and entered a Final Judgment in replevin in favor of the defendants. The appellant at this juncture does not contest the General Master's findings of fact. This being so, we find no error in his recommendations thereon, or the action of the trial court in denying the exceptions filed by the plaintiff. We hold that as a matter of law when an artist fails to avail himself of the provisions of the Artist's Consignment Act, Sections 686.501 et seq., Florida Statutes, and places in commerce paintings of art with no notation as to ownership thereon, an innocent third party who takes a security position in these paintings has a superior possessory interest, vis-a-vis the artist under the long established principle of law that as between two innocent parties, the one that created the situation causing the loss, will not be held to have a superior position to the completely innocent party upon the following authority, Correria v. Orlando Bank & Trust Company, 235 So.2d 20, 25 (Fla. 4th DCA 1970); Glass v. Continental Guaranty Corp., 81 Fla. 687, 88 So. 876, 25 A.L.R. 312 (1921), and that the UCC has not altered this common law principle. Independent News Co. v. Williams, 293 F.2d 510 (3rd Cir.1961); Milnes v. General Electric Credit Corp., 377 So.2d 725 (Fla. 3d DCA 1980); Carlsen v. Rivera, 382 So.2d 825 (Fla. 4th DCA 1980).
Therefore the Final Judgment in Replevin in favor of the defendants/appellees be and the same is affirmed.
Affirmed.