138 N.J. Super. 489 (1975)
351 A.2d 402
JAMES E. CUNNINGHAM, PLAINTIFF,
v.
CAMELOT MOTORS, INC., BERNARD TREICH, LOUIS DI VITA, HUDSON UNITED BANK AND BRITISH LEYLAND MOTORS, INC., DEFENDANTS. EUGENE KOBLENTZ, PLAINTIFF,
v.
CAMELOT MOTORS, INC., BERNARD TREICH, LOUIS DI VITA, HUDSON UNITED BANK AND BRITISH LEYLAND MOTORS, INC., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 18, 1975.
*490 Mr. John S. Kuhlthau for plaintiff James E. Cunningham (Messrs. Kuhlthau and Nagle, attorneys).
Mr. Mitchell S. Camp for plaintiff Eugene Koblentz (Messrs. Gladstone, Hart, Mandis, Rathe & Shedd, attorneys).
Mr. William C. Meehan for defendants Camelot Motors, Inc., Bernard Treich and Louis Di Vita (Messrs. Contant, Contant & Meehan, attorneys).
Mr. George P. Moser for defendant Hudson United Bank (Messrs. Moser, Roveto & McGough, attorneys).
GELMAN, J.S.C.
These actions arise out of the failure of an automobile dealer to deliver certificates of ownership and motor vehicle registrations to purchasers of new automobiles. The relevant facts are undisputed, and both cases present a *491 common question of law involving the interpretation and application of § 9-307(1) of the Uniform Commercial Code, N.J.S.A. 12A:9-307(1), as well as the Motor Vehicle Certificate of Ownership Law, N.J.S.A. 39:10-1 et seq.
Camelot Motors, Inc. is an authorized and licensed new and used car dealer maintaining a sales office and showroom in Bergenfield, New Jersey. On August 19, 1975 plaintiff James Cunningham went to Camelot's showroom and selected a new Triumph motor vehicle to purchase for his personal use. He signed a purchase order and subsequently paid the purchase price of the automobile in full, together with the sales tax and registration fees. On August 21 Camelot turned over possession of the vehicle to him together with a temporary registration certificate. It was agreed that the permanent registration certificate would be mailed by Camelot to plaintiff's bank on the following day. Cunningham still has possession of the vehicle, but Camelot has failed to furnish to him a certificate of ownership of the automobile or to procure a proper registration of the vehicle in his name.
Plaintiff Eugene Koblentz also visited Camelot's showroom in August 1975, seeking a new automobile for his personal use. He selected a 1975 Jaguar and signed a purchase order on August 16, 1975. On August 22, 1975 Camelot delivered the new Jaguar to Koblentz, and he paid Camelot the full balance due on the purchase price, including the sales tax and registration fees. At the time of delivery, the principals of Camelot gave Koblentz the automobile with Camelot's own dealer license plates and registration. They promised to deliver the certificate of ownership and registration a few days later. As in the case of Cunningham, Camelot has failed to deliver to Koblentz a certificate of ownership or registration for the vehicle he purchased.
Three years prior to either of the above transactions Camelot had entered into a floor plan financing agreement with defendant Hudson United Bank (Hudson). Under the terms of the agreement Hudson advanced moneys to Camelot and *492 received a security interest in all motor vehicles then owned or thereafter acquired by Camelot. A UCC financing statement was filed reflecting Hudson's security interest in Camelot's inventory, and Hudson obtained possession of all of the certificates of origin issued by the manufacturer of new automobiles in Camelot's inventory. The agreement further authorized Camelot to sell any vehicles from its inventory in the regular course of its business, and Camelot was obligated to remit to Hudson the loan balances on the vehicles which Camelot sold.
Camelot failed to make the required remittances to Hudson on the automobiles which are the subject of these actions, and Hudson has refused to surrender the certificates of origin to Camelot or to either of the plaintiffs.[1] The result is that neither plaintiff has been able to obtain a certificate of ownership or to register his vehicle. See N.J.S.A. 39:10-11.
Plaintiffs have moved for summary judgment and both seek an order directing Camelot and Hudson to surrender and endorse the certificates of origin to them. While assuming that Hudson has a perfected security interest in the vehicles,[2] plaintiffs urge that under UCC § 9-307(1), Hudson's security interest is invalid as to them. The cited section of the Code is entitled "Protection of Buyers of Goods" and provides in pertinent part:
*493 A buyer in ordinary course of business (subsection (9) of 12A: 1-201) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence. [N.J.S.A. 12A:9-307(1)]
UCC § 1-201(9) defines a "buyer in ordinary course of business" as
* * * a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt. [N.J.S.A. 12A:1-201(9)]
The purpose of § 9-307(1) is obvious: to protect bona fide purchasers for value who acquire goods in the ordinary course of business from a merchant's inventory. See White and Summers, Uniform Commercial Code § 25-13 (1972); Muir v. Jefferson Credit Corp., supra 108 N.J. Super. at 593. To meet the conditions imposed by § 9-307(1), plaintiffs must show only that they purchased the automobiles (1) in good faith; (2) without knowledge that the sale was in violation of Hudson's security interest;[3] (3) from a person in the business of selling goods of that kind; and (4) for present value, i.e., cash or by a present exchange of other property. The facts set forth in the moving papers establish that these conditions have been met by these plaintiffs and that under § 9-307(1) they take free of Hudson's security interest in the automobiles.[4]Sterling Acceptance *494 Co. v. Grimes, 194 Pa. Super. 503, 168 A.2d 600 (1961); Weisel v. McBride, 191 Pa. Super. 411, 156 A.2d 613 (1959).
Hudson urges, however, that even if the plaintiffs have defeated its perfected security interest under the UCC, it nevertheless  and as an added precaution  acquired and has retained possession of the certificates of origin of the vehicles which thereby precluded any valid sale or transfer of title to plaintiffs, since the seller, Camelot, could not endorse the certificate of origin to plaintiffs as required by N.J.S.A. 39:10-8. Hudson's position in essence is that through possession of the certificates of origin it reserved for itself a form of private security interest which is not subject to defeasance by a buyer in the ordinary course of business under provisions of § 9-307(1)
The Motor Vehicle Certificate of Ownership Law, N.J. S.A. 39:10-1 et seq., provides a comprehensive scheme for the purchase, sale and transfer of motor vehicles. In the case of new motor vehicles delivered in this State, the manufacturer of the vehicle is required to execute and deliver to the dealer a certificate of origin in the form prescribed by the Director of Motor Vehicles, N.J.S.A. 39:10-8, and a new car dealer is required to retain in his possession the certificates of origin for all such vehicles in his inventory. N.J.S.A. 39:10-21. Thus, the statutory scheme which Hudson invokes for its own protection precluded it from acquiring possession and control of the certificates of ownership in the first instance. To the extent that the transfer of the certificates of ownership by Camelot to Hudson constituted a form of pledge or private security arrangement, the transaction violated the statute and must be treated as a nullity. See *495 Buttinghausen v. Rappeport, 131 N.J. Eq. 252, 254 (Ch. 1942), in which Vice-Chancellor Bigelow reached a similar conclusion where a bank had retained possession and control of the bill of sale of a used motor vehicle in lieu of recording its lien.
There is a further reason for rejecting Hudson's argument which derives directly from the language of the statute on which it relies, i.e., N.J.S.A. 39:10-8. The second paragraph of that statute requires the dealer to execute and deliver to the purchaser an assignment of the certificate of origin in connection with the sale of a new motor vehicle. If the dealer retains or a third party acquires a security interest in the vehicle at the time of the sale, the name and address of the secured party must be noted on the certificate of origin. The statute concludes by stating that
* * * [n]othing in this section shall apply to security interests in motor vehicles which constitute inventory held for sale, but such interests shall be subject to chapter 9 of Title 12A of the New Jersey Statutes. [N.J.S.A. 39:10-8][5]
This language was added to the statute to coincide with the effective date of the enactment of the Uniform Commercial Code in this State, and its purpose was to ensure that buyers of motor vehicles out of a dealer's inventory in the ordinary course of business would be entitled to the protection afforded by § 9-307(1) as against security interests held by third parties such as Hudson, even if such interests were otherwise perfected. To hold otherwise would subject a consumer to the commercially unreasonable duty of searching the files of the Secretary of State and of the Director of the Bureau of Motor Vehicles before purchasing a motor vehicle out of inventory from a licensed dealer. The Legislature has decreed otherwise, and by adopting the formula of the *496 UCC to the sale of motor vehicles, has explicitly cast the burden of loss in this situation upon the secured party rather than upon the consumer.
An order will be entered directing Hudson to surrender the certificates of origin to Camelot and directing Camelot to execute and deliver the certificates to plaintiffs.
NOTES
[1] The facts present a classic illustration of what is known in the trade as a dealer "going out of trust." At oral argument counsel for Hudson advised the court that 11 automobiles were sold by Camelot in a similar manner during August 1975, and actions by four other purchasers are pending before the court.
[2] This assumption may be indulged for the purpose of this disposition, although there has been no showing by Hudson that it complied with the requirements for perfecting its security interest in these automobiles under the Motor Vehicle Law. See In re Manufacturers Credit Corp., 441 F.2d 1313, 1317 (3 Cir.1971); Muir v. Jefferson Credit Corp., 108 N.J. Super. 586, 589-591 (Law Div. 1970).
[3] It should be noted that the security agreement between Hudson and Camelot specifically authorized the latter to sell motor vehicles out of its inventory.
[4] In its brief Hudson suggests that plaintiffs might be chargeable with notice of some irregularity and hence are not good faith purchasers because Camelot did not deliver the certificates of ownership and registrations at the time of delivery of the motor vehicles. While plaintiffs may have been duped by Camelot, the acceptance of the vehicles under the circumstances would not as a matter of fact or law put them on notice of Hudson's rights or impair their status as innocent purchasers for value. See Balon v. Cadillac Auto. Co.. of Boston, 113 N.H. 108, 303 A.2d 194, 196-197 (Sup. Ct. 1973); cf. Buttinghausen v. Rappeport, 131 N.J. Eq. 252, 253 (Ch. 1942.)
[5] The identical provision is found in N.J.S.A. 39:10-9 which applies to the sale of used vehicles and the transfer of the certificate of ownership at the time of sale.