### GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,

v.

### H. C. HUMBLE, individually and d/b/a H & H Mobile Homes Sales; et al. (fictitious defendants), Defendants.

### Civ. A. No. 81–140–S.

United States District Court, M. D. Alabama, S. D.

Feb. 12, 1982.

Ritchey & Ritchey, Albert E. Ritchey, Birmingham, Ala., for plaintiff.

Cassady, Fuller & Marsh, Kenneth T. Fuller and Paul A. Young, Jr., Enterprise, Ala., for defendants.

### MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiff General Electric Credit Corporation (GECC), a New York corporation with its principal place of business in Connecticut, brought this diversity action against H. C. Humble, individually and d/b/a H & H Mobile Homes Sales, a citizen of Alabama. In its complaint, GECC seeks possession of

three mobile homes which were sold to Humble by Sanderson Mobile Homes, Inc., or, in the alternative, plaintiff seeks the value of the three mobile homes, alleged to total $23,800.00, plus damages for defendant's wrongful detention of the mobile homes.[1]

The facts in this case have been submitted to the Court on a stipulation of the parties and are not disputed. On January 2, 1980, Sanderson Mobile Homes, Inc. entered into an agreement with GECC in which Sanderson granted to GECC a security interest in all of its inventory, including but not limited to mobile homes, both new and used, presently owned and thereafter acquired, together with all proceeds of the sale or the disposition thereof. GECC subsequently perfected its security interest under Alabama law by filing the appropriate financing statements.

On September 25, 1981, Sanderson transferred one used, repossessed 1976 model mobile home to Humble; and on October 7, 1981, Sanderson transferred two used, repossessed 1976 and 1977 mobile homes to Humble. All of these transfers were made pursuant to bills of sale. Although the price paid for each mobile home was less than the NADA wholesale book value,[2] no claim has been made that the sum paid for these used, repossessed mobile homes was less than fair market value for such sales, and plaintiff presented no evidence that the sales reflected less than fair market value for the particular mobile homes. The Court has no evidence before it on the condition of these repossessed mobile homes at the time of their sale by Sanderson to Humble.

By a letter dated November 11, 1981, GECC notified Humble that Sanderson had defaulted in its obligations to GECC and that GECC had a perfected security interest in the mobile homes transferred to Humble. GECC demanded that Humble release the mobile homes to GECC or pay the value of the mobile homes. Humble acknowledged receipt of the letter, but has refused to deliver possession of the mobile homes to GECC or pay GECC the value of the mobile homes.

As the basis of its claim, GECC relies on Section 7–9–306(2) of the Alabama Code, which provides: "Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless his action was authorized by the secured party in the security agreement or otherwise...." Humble, on the other hand, relies on an exception to the protection afforded creditors by Section 7–9–306(2). This exception arises under Section 7–9–307(1) of the Alabama Code when a buyer in the ordinary course of business purchases the collateral from the debtor and such purchase is valid even though the buyer knows of the existence of the security interest created by the debtor. According to these provisions of the Alabama version of the Uniform Commercial Code, the determinative factor in deciding if Humble takes the mobile homes free of GECC's security interest is whether Humble qualifies as a buyer in the ordinary course of business.

A buyer in the ordinary course of business is defined in Section 7–1–201(9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security

1. GECC initially sought an interlocutory order for the issuance of a writ of detinue to acquire possession of the mobile homes in question pending the outcome of the instant suit, see Fed.R.Civ.P. 64; Ala.Code § 6–6–250 (1975), but at the hearing on GECC's request for an interlocutory order both parties agreed that Humble could maintain possession of the mobile homes upon the condition that the proceeds from any sales would be held in trust pending this Court's ruling. The parties further agreed to submit this case for decision on the stipulations and briefs now before the Court.

2. The parties have stipulated that the NADA wholesale book value of the mobile homes and the amount paid by Humble for the mobile homes are as follows:

| MOBILE HOMES | NADA WHOLE- SALE BOOK VALUE | AMOUNT PAID BY HUMBLE |
|---|---|---|
| 1975 Statesman | $8,311.00 | $6,000.00 |
| 1977 All American | 6,355.00 | 4,100.00 |
| 1976 Kajn | 8,311.00 | 5,900.00 |

interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind." Good faith is defined in Section 7–1–201(19) of the Alabama Code to be "honesty in fact in the conduct or transaction concerned." This definition creates a subjective standard of good faith. Good faith is also defined in Section 7–2–103(1)(b), which is expressly applicable to merchants, as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." This definition creates an objective standard of good faith. GECC contends that the objective standard of Section 7–2–103(1)(b) is applicable in this case since Humble is a merchant in the business of buying and selling mobile homes. Specifically, GECC contends that Humble was not observing reasonable commercial standards of fair dealing and, consequently, was not acting in good faith so as to qualify as a buyer in the ordinary course of business when Humble purchased the three mobile homes from Sanderson without making a record inquiry to determine if the mobile homes were subject to a security interest.

GECC argues that a sale between dealers is not in the ordinary course of business unless the merchant buyer makes a record inquiry to determine if the mobile homes are subject to a security interest. GECC further contends that upon discovery of a security interest, the merchant buyer must also investigate to see if the sale violates the terms of the security agreement. In support of its argument, GECC relies on the case of *Swift v. J. I. Case Co.*, 266 So.2d 379 (Fla.Dist.Ct.App.1972).

If this Court agreed with the sweeping holding of the Florida court, it would follow that GECC would be entitled to the relief it seeks. This Court does not agree, however. Section 7–9–307(1) of the Alabama Code

provides that even actual knowledge that a perfected security interest exists would not defeat a buyer in the ordinary course of business. To prevent a buyer in the ordinary course of business from taking free of the security interest, the secured party must also show that the buyer had knowledge that the sale by the debtor was unauthorized under some term of the security agreement.[3]

In their commentary on the UCC, Willier and Hart question the holding of the Florida court in the *Swift* case as follows:

It is doubtful that a security agreement between a manufacturer and a dealer would prevent resale. The decision of the court produces the strange result that buyer fails to take free of the security interest merely because he did not inquire as to the existence of a security agreement covering the goods, when had he so done, he would have discovered nothing to impair his right to take a clear title to the goods. This decision, in effect, at least for a merchant buyer, changes the requirement of 9–307 that the buyer not have actual knowledge that the sale violates a security agreement, to a requirement that buyer have taken measures to acquire positive knowledge that the sale is not in violation of a security agreement.[4]

In the instant case, GECC has failed to present any evidence that there was anything unusual in the sale of used mobile homes from dealer Sanderson to dealer Humble. In fact, the parties have stipulated that such sales were made on other occasions by the debtor Sanderson. Under modern business practices, it would seem surprising if most automobiles and mobile homes in the hands of dealers were not financed with security agreements, and Section 7–9–307 expressly provides that a

---

**3.** "Reading the two provisions [Sections 7–9–307 and 7–1–201(9)] together, it results that the buyer takes free if he merely knows that there is a security interest which covers the goods but takes subject if he knows, in addition, that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party." Ala.

Code § 7–9–307, Official Comment 2 (1975); see *Cessna Fin. Corp. v. Skyways Enterprises, Inc.*, 580 S.W.2d 491 (Ky.1979).

**4.** Willier and Hart, U.C.C. Reporter-Digest § 9–307 A50. (Matthew Bender & Co. 1981). See also *Taft v. Kaplan (In re Dexter Buick-GMC Truck Co.)*, 2 B.R. 253 (D.R.I.1980).

buyer in the ordinary course of business takes free of a valid security interest "even though the buyer knows of its existence." In order for such a security instrument to defeat a sale between merchant dealers, the buyer must have knowledge of facts that would put him on notice that the sale is in violation of some term of the security agreement. GECC not only failed to show the existence of such facts; it failed to offer evidence of any facts that would even suggest that any inquiry be made.

GECC argues that Humble was particularly at fault for failing to make a record inquiry in this case because the purchases of the mobile homes were pursuant to bills of sale[5] rather than the assignment of certificates of origin, which GECC contends is the customary method of transferring title to a mobile home. Argument is not a substitute for evidence. Plaintiff has offered no evidence that the sale of mobile homes between dealers in Alabama or elsewhere is customarily accompanied by an assignment of a certificate of origin. Consequently, there is no evidentiary basis for the proposition that the failure to make the transfer with a certificate of origin would alert an Alabama mobile home dealer to any probable flaw in the sale.

In *Swift* the Florida court apparently relied on the objective standard of good faith in reaching its decision. A number of courts, however, have applied the subjective standard of good faith in determining whether a purchaser of collateral qualifies as a buyer in the ordinary course of business.[6] Although it appears that the subjective standard found in Section 7–1–201(19) is operative in this case since the objective standard expressed in Section 7–2–103(1)(b) is only applicable to Article 2 transactions under the Alabama Code, this Court is of

the opinion that GECC is not entitled to prevail under either the objective or subjective standard.

If GECC hoped to prevail under either standard, it would have to show more than that Humble failed to inquire about a security interest. In the opinion of this Court, GECC must show that the merchant buyer either had knowledge that the sale violated a security agreement or at least that it had knowledge of facts that would make a reasonable prudent buyer undertake some inquiry. GECC must offer some proof that would take these sales out of the ordinary course of business.

If GECC had shown by the evidence that the failure to accompany the transfer of these used mobile homes with certificates of origin was so unusual as to put a prudent merchant dealer on notice of a possible flaw in the transaction, or if it had presented evidence of such inadequate payment for the mobile homes that would have created a reasonable doubt as to the good faith of the seller, this Court would be required to examine carefully the good faith of the merchant buyer under either standard. But no evidence was offered, and GECC's sole reliance that Humble's purchase was not in the ordinary course of business is based on its contention, rejected by this Court, that a merchant buyer with respect to all purchases must make record inquiry of any security interests before claiming the protection afforded by Section 7–9–307(1).

GECC also maintains that, by virtue of Sanderson's default of its properly perfected security agreements with GECC prior to the transfer of the mobile homes from Sanderson to Humble, GECC had title to and a right to the immediate possession of the mobile homes prior to their transfer to Humble.[7] GECC contends that under Sec-

---

**5.** Mobile homes may be transferred by bills of sale in Alabama because mobile homes are exempted under the provisions of the Alabama Uniform Certificate of Title and Antitheft Act. *See* Ala.Code § 32–8–31(9) (1975).

**6.** *See, e.g., Martin Marietta Corp. v. New Jersey Nat'l Bank*, 612 F.2d 745 (3rd Cir. 1979); *Sherrock v. Commercial Credit Corp.*, 290 A.2d 648 (Del.1972). *See generally* Skilton, *Buyer in*

*Ordinary Course of Business Under Article 9 of the Uniform Commercial Code (and Related Matters)*, 1974 Wis.L.Rev. 1, 24–28.

**7.** Section 7–9–503, Alabama Code, provides in part: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral."

tion 7–9–306(2) its right to possession is consequently superior to any right of Humble. As previously mentioned, Section 7–9–306(2) does afford a creditor a degree of protection by providing that a security interest continues in collateral notwithstanding sale by the debtor. Nevertheless, an exception to the creditor's continuing security interest arises under Section 7–9–307(1) when a buyer in the ordinary course of business purchases the collateral from the debtor. Since the Court finds that Humble was a buyer in the ordinary course of business under Section 7–9–307(1) for the reasons previously discussed, Humble took title to the mobile homes regardless of GECC's perfected security interest.[8] GECC clearly had the right to take possession of the collateral from Sanderson upon default; but, having failed to do so, GECC may not now recover against Humble.

An order will be entered this date finding all issues in favor of defendant Humble.

---

8. GECC cites *Get It Kwik of America, Inc. v. First Ala. Bank*, 361 So.2d 568 (Ala.Civ.App. 1978) in support of its argument that GECC's security interest continued in the collateral since it was sold to Humble after Sanderson was in default. That case is not persuasive, however, since the Alabama court pointed out that the sale in question "was out of the ordinary course of business." *Id.* at 573.