This is an appeal from a summary judgment. The action arose out of a secured transaction.
On February 24, 1981 First National Bank of Huntsville, N.A., entered into a security agreement with Schrader AMC-Jeep, Inc., also of Huntsville. In this agreement the bank was granted a security interest in all the automobile dealer's present and after acquired inventory of new and used automobiles, demonstrators, spare parts, and supplies. Schrader and the bank also entered into a floor plan arrangement whereby the bank financed the dealer's inventory. All the necessary steps were taken to perfect the security interest.
On July 10, 1981 the AMC sales manager for Frank Davis Buick AMC-Jeep, Inc., an automobile dealership in Nashville, Tennessee, contacted the American Motors zone office in Atlanta to locate a particular type of jeep for a customer. He was told that the Schrader dealership had the particular vehicle in stock. Purchasing arrangements were made with the Huntsville dealership and on July 11, 1981 two daughters of one of Frank Davis Buick's salesmen drove to Huntsville to get the jeep. In exchange for the automobile, they delivered to Schrader AMC-Jeep a check in the amount of $9,251.95. A bill of sale was issued showing the amount due as zero. The vehicle was taken back to Nashville.
A couple of days later the Nashville dealership realized that the manufacturer's statement of origin and original invoice had not been furnished in the July 11th transaction. A Frank Davis Buick employee telephoned Schrader AMC-Jeep and was told by them that the documents would be forwarded immediately. Soon thereafter Schrader AMC-Jeep ceased doing business. The documents were never sent.
During an inventory check of the Schrader dealership made on July 16, 1981, the bank discovered that Schrader had transferred the jeep to Frank Davis Buick and the bank had not received payment for the jeep. Under the terms of the floor plan agreement, payoff of sold floor planned units is due the bank in full when cars are sold.
Frank Davis Buick learned that First Alabama Bank held the manufacturer's statement of origin and original invoice for the automobile, and requested on a couple of occasions that the bank send the documents to the dealership. The dealership alleged, in an affidavit, that a bank employee agreed to send the manufacturer's statement of origin and invoice. The bank denies that such an arrangement was made. In fact the bank asserts that it told the dealership's employee that the bank held a perfected security interest in the vehicle and would discuss the matter with the bank's counsel. The documents were never forwarded by the bank.
On October 2, 1981 First Alabama Bank formally informed Frank Davis Buick, by letter, that it held a validly perfected security interest in the jeep and demanded that possession of the automobile be returned to the bank. The jeep had been sold to a customer on July 20, 1981, approximately two months prior to receipt of the bank's letter.
The bank, on October 13, 1981, filed a complaint alleging conversion and demanding $9,226.95, interest and costs. Frank Davis Buick pleaded, as a defense, that it was a buyer in the ordinary course of business and took the jeep free of plaintiff's security interest. Defendant further pleaded that the bank had authorized the sale of the jeep and therefore was precluded from recovery. A counterclaim was also filed requesting, among other things, the delivery of the manufacturer's statement of origin and original invoice to Frank Davis Buick.
Both parties filed a motion for summary judgment and supporting affidavits. The circuit court granted plaintiff's motion for *Page 857 
summary judgment and ordered the defendant to pay First Alabama Bank of Huntsville $9,226.95, plus six percent interest and costs. From this judgment defendant appeals.
The appellate court, on an appeal from summary judgment, looks at the same factors which the lower court considered in making its ruling on the motion. Tolbert v. Gulsby,333 So.2d 129 (Ala. 1976). A motion for summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Alabama Rules of Civil Procedure 56 (c). In determining whether the motion should be granted, all reasonable inferences from the facts are viewed in the light most favorable to the nonmoving party. Kutack v.Winn-Dixie Louisiana, Inc., 411 So.2d 137 (Ala. 1982). Our review of the record reveals only one factual issue in dispute in this case, i.e., whether a bank employee stated, upon the dealership's requests, that the documents would be forwarded. We note, however, that this factual dispute is unrelated to the real issue before this court. The issue here is whether the trial court applied the correct rule of law.
A resolution of this case requires an interpretation of the applicable provisions of Alabama's Commercial Code. Inasmuch as this is a case of first impression, it will be necessary to examine the cases decided by other jurisdictions.
The bank's claim is based on section 7-9-306 (2), Code 1975, which provides:
 "Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor unless the disposition was authorized by the secured party in the security agreement or otherwise. . . ."
The dealer-purchaser of the jeep relies on an exception to the protection of section 7-9-306 (2), Code 1975. This exception provides:
 "A buyer in ordinary course of business (subsection (9) of section 7-1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."
§ 7-9-307 (1), Code 1975. Important to our disposition of this case is a determination of whether Frank Davis Buick qualifies as a buyer in the ordinary course of business.
A buyer in the ordinary course of business is defined in section 7-1-201 (9), Code 1975, as:
 "[A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. . . ."
The commercial code provides two definitions of good faith. In section 7-1-201 (19), Code 1975, good faith is defined as "honesty in fact in the conduct or transaction concerned." Section 7-2-103 (1)(b) states that good faith "in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."
The bank contends that the objective standard of good faith found in section 7-2-103 (1)(b), Code 1975, applies and precludes defendant from taking the jeep free of the bank's security interest. Specifically, the bank argues that the purchaser-dealer, by failing to check for outstanding security interests in the vehicle, was not observing reasonable commercial standards of fair dealing for the automobile industry. Therefore, the dealership was not acting in good faith. To support this position, the bank relies in part on the deposition of the president of Frank Davis Buick. In the deposition, statements were made to the effect that the dealer-purchaser had no knowledge of any outstanding security interest and that no effort was made to ascertain whether there was any security interest *Page 858 
outstanding. It is evident from the record that the president of the Nashville dealership floor-planned his inventory and, consequently, should have realized that there may be a security interest in the jeep. To buttress their argument, the bank cites Swift v. J.I. Case Co., 266 So.2d 379 (Fla.Dist.Ct.App. 1972).
Swift involved the sale of a tractor by J.I. Case Company, the manufacturer, to Florida Tractor Mart. Case held a perfected security interest in the tractor. Florida Tractor Mart, pursuant to an oral lease, transferred possession of the tractor to Gator Tractor. Gator Tractor traded the tractor to Swift. The manufacturer filed an action for replevin. The Florida Court of Appeals held the purchaser-dealer to the merchant's standard of good faith. The court stated that a tractor merchant, acting in accordance with the reasonable commercial standards of fair dealing in the tractor trade, may not purchase a tractor from another dealer free of a perfected security interest without first making a good faith check to determine the existence of any such security interest.
Other jurisdictions have held that the general, subjective standard of good faith, found at section 7-1-201 (19), Code 1975, is to be applied in transactions such as this. See MartinMarietta Corp. v. New Jersey National Bank, 612 F.2d 745 (3d Cir. 1979); Sherrock v. Commercial Credit Corp., 290 A.2d 648
(Del. 1972). One such jurisdiction is Illinois.
In Massey-Ferguson, Inc. v. Helland, 105 Ill. App.3d 648, 64 Ill.Dec. 142, 434 N.E.2d 295 (1982), the court looked to the relevant Uniform Commercial Code sections in determining which good faith standard to apply. U.C.C. section-1-201 states that the definitions contained in article one apply to the entire commercial code. These general definitions are subject to additional definitions found in other articles, which are applicable to the other specific articles or parts of articles. The definitional sections of article two on sales and article nine on secured transactions both provide that the definitions found in each article apply throughout that article and that the general definitions found in article one also apply in the article. The court then reasoned that the article two definition of good faith applies only to the sales article and that the general article one definition of good faith applies to article nine. The court's reasoning was fortified by the official comment to section 1-201 (19), which states:
 "`Good faith', whenever it is used in the Code, means at least what is here stated. In certain Articles, by specific provisions, additional requirements are made applicable. See, e.g., Secs. 7-2-103 (1)(b), 7-7-404. To illustrate, in the Article on Sales, Section 7-2-103, good faith is expressly defined as including in the case of a merchant observance of reasonable commercial standards of fair dealing in the trade, so that throughout that Article whenever a merchant appears in the case an inquiry into his observance of such standards is necessary to determine his good faith."
The objective good faith standard, proposed by the bank, was recently rejected in General Electric Credit Corp. v. Humble,532 F. Supp. 703 (M.D.Ala. 1982). We, too, recognize the subjective good faith definition of section 7-1-201 (19), Code 1975, as the operative standard for article nine transactions between merchants. As so aptly stated by the Third Circuit Court of Appeals, "we feel it inappropriate to import the article 2 definition into article 9 without more explicit statutory authority." Martin Marietta Corp. v. New JerseyNational Bank, supra.
Moreover, our review of the record reveals that even under the stricter good faith test proposed by the bank, Frank Davis Buick would take the jeep as a buyer in the ordinary course of business. The tougher standard would require the dealership to search for any outstanding security interests in the vehicle. But even if the purchaser discovered the security agreement, knowledge of that secured interest alone will not defeat a buyer in the ordinary course of business. "In order for such a security instrument to defeat a sale between merchant dealers, the buyer must *Page 859 have knowledge of facts that would put him on notice that thesale is in violation of some term of the security agreement."General Electric Credit Corp. v. Humble, supra. (Emphasis added.)
No evidence was presented that would put a purchaser on notice. Frank Davis Buick, at the time of the purchase, was unaware of Schrader's financial difficulties. The vehicle was not sold at a price that should make the dealership suspicious of the sale. We note that nothing contained in the security agreement drafted by the bank indicates that such a sale is unauthorized. In fact the agreement authorizes the sale of vehicles by spelling out that floor planned units are to be paid up immediately after the units are sold.
Frank Davis Buick took the vehicle free of the bank's security interest. Therefore, the summary judgment rendered in favor of the bank is reversed and the cause is remanded for the entry of a summary judgment in favor of Frank Davis Buick. We also conclude that the judgment concerning the dealership's counterclaim should be reversed. The bank in brief argues that since the dealership sold the vehicle it no longer has an interest in the vehicle and therefore cannot bring the counterclaim. However, our review of the record shows that the dealership had to post a bond for the automobile title when the jeep was sold to a customer. Since Frank Davis Buick is still under this bond it has an interest in the vehicle and can properly bring this counterclaim. Furthermore, since Frank Davis Buick, as a buyer in the ordinary course of business, took the vehicle free of the bank's interest, the documents are due to be delivered to the dealership.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.