Harold Whitworth, doing business as Whitworth Motor Company, sued D.T. Dodd to recover possession of a 1981 Ford pickup truck. From a judgment in favor of the defendant, after a trial without a jury, Whitworth appeals.
On March 19, 1981, Christine Harris, Sulligent, Alabama, purchased the 1981 Ford pickup truck from Davis Ford Sales, Inc., Fulton, Mississippi. The vehicle was subsequently repossessed by Ford Motor Credit Corporation and returned to Davis Ford Sales by recourse or for resale. On December 18, 1981, Davis Ford Sales sold the truck to Harold Whitworth, a used car dealer in Lackey, Mississippi. This transaction was not accompanied by a certificate of title but a replacement certificate of title was applied for from the Alabama Department of Revenue.
On January 30, 1982, Joe Ed South, a used car dealer in Winfield, Alabama, negotiated the sale of two 1981 Ford pickup trucks from Whitworth at his business in Mississippi. Whitworth accepted a check and transferred title and possession to the "other" truck. On the truck in this action, Whitworth made out a bill of sale and odometer form, which he kept in his possession, accepted a sight draft on a Winfield bank from Joe Ed South and allowed South to take possession of the truck. South apparently placed the truck on his lot in Winfield where on February 27, 1982, he sold it to D.T. Dodd. A tag was obtained for the truck, by South, in Fayette County, and application for title was made by Dodd. The State of Alabama issued a replacement title dated February 22, 1982, to Davis Ford Sales who transferred title to Whitworth Motors which transferred title to South, but retained the certificate. Whitworth presented the draft, title certificate, bill of sale and odometer form to the bank. The draft was dishonored. On April 6, 1982, Whitworth again presented the draft and papers to the bank, and again it was dishonored and marked "insufficient funds." Whitworth rescinded the transfer of title to South and made demand on Dodd for the return of the truck.
It appears from the record that Dodd purchased the truck from Joe South, a used car dealer, from his used car lot, in the ordinary course of business.
A similar situation was presented in this court in FirstDallas County Bank v. General Motors Acceptance Corporation,425 So.2d 460 (Ala.Civ.App. 1982); aff'd, 425 So.2d 464 (Ala. 1983). In that case this court held that an automobile purchased from a dealer in the ordinary course of business took title free and clear of security interests of others in the automobile, even if perfected, under § 7-9-307 (1), Code of Alabama 1975 (Supp. 1982). In that case Davis, a used car dealer, purchased a 1980 Pontiac for his own personal use on an installment sales contract and security *Page 1307 
agreement which was eventually sold to GMAC. After about seven months of personal use, Davis sold the automobile to Smith who obtained a loan from First Dallas County Bank and entered into an installment sales contract and security agreement, which gave the bank a security interest in the automobile. Davis failed to pay GMAC, and GMAC retained the original title, note, financing agreement and other documents furnished by Davis in connection with his loan.
Section 7-9-307 (1) provides as follows:
 "A buyer in ordinary course of business [subsection 9 of section 7-1-201], other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."
As stated in First Dallas County Bank v. General MotorsAcceptance Corporation, supra,
 "Subsection (1) allows a `buyer in the ordinary course of business' to take free of a security interest created by his seller because it is felt that such a buyer has the right to expect that a merchant has the power to sell the particular item and that the buyer will be able to retain the item free of any security interest created by the seller. (Citations omitted.)"
425 So.2d at 463. This case also states:
 "A final point that supports protecting `buyers in the ordinary course of business' is the fact that secured creditors who know that the goods financed by them are inventory must expect that the goods will be sold and consequently that the `buyer in the ordinary course of business' should have superiority. 4 R. Anderson, Uniform Commercial Code § 9 307:8 [2nd ed. 1971]"
Id. In that regard from the transcript of the testimony of Mr. Whitworth:
 "Q. All right. What about the one he gave you the sight draft on? Did you and he have any understanding about what you and he were to do about that truck?
 "A. Well, he thought he could sell it. The truck had a little damage on the hood. He was going to take it and clean the truck up and maybe fix the place on the hood and maybe by that time the draft would be in and he would pay me for the truck.
 "Q. Okay. Did you tell him he couldn't sell the truck until the sight draft was paid?
"A. No.
 "Q. Did you have any understanding like that? You understood he was in the car business and he was out to sell it?
"A. That is correct."
The appellant propounds the issue, "Where motor vehicles are concerned, does the Uniform Certificate of Title and Antitheft Act, rather than the Uniform Commercial Code, govern ownership and legal title?" In Ex parte General Motors AcceptanceCorporation, it was stated:
 "The second argument raised by GMAC is that if the Uniform Certificate of Title and Antitheft Act is not complied with the transfer and subsequent mortgage are null and void. However, the Act does not apply to a security interest created by a seller who holds a vehicle for sale.
 "Again, when Davis put the car on the used car lot it became a vehicle held for sale by a dealer. The policy considerations that mandate this result under Code 1975, § 7-9-307 (1), require the same result under § 32-8-1 through -87."
425 So.2d at 467.
The appellant has cited certain sections of the Code of Mississippi in his brief. These issues were not pleaded or tried in the trial court but apparently raised on appeal for the first time. The courts of Alabama do not take judicial notice of the law of a sister state, whether statutory or otherwise. Watkins v. Brannon, 54 Ala. App. 424, 309 So.2d 464
(1974). Foreign laws must be pleaded and proved as evidence.Id. Issues not raised below may not be considered for the first time on appeal. Brown v. Brown, 374 So.2d 332 (Ala.Civ.App.), *Page 1308 cert. denied, 374 So.2d 334 (Ala. 1979). Therefore, these issues will not be considered on appeal.
Where one of two equally innocent persons must suffer, the one whose act enabled wrongdoer to commit wrong must suffer the loss. J.L. McClure Motor Co. v. McLain, 34 Ala. App. 614,42 So.2d 266 (1949).
The judgment appealed from is affirmed.
The foregoing opinion was prepared by retired Circuit Judge ROBERT M. PARKER, serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama 1975, and this opinion is hereby adopted as that of this court.
AFFIRMED.
All the Judges concur.