Lee FRANKLIN, Individually, and
d/b/a Auto Brokers, Appellant
(Defendant),

v.

FIRST NATIONAL BANK OF
MORRILL, NEBRASKA,
Appellee (Plaintiff).

No. 92–132.

Supreme Court of Wyoming.

March 10, 1993.

**776**

Michael E. Warren (argued), Sawyer, Warren & Kautz, Torrington, for appellant.

Gregory C. Dyekman (argued) and W. Perry Dray, Dray, Madison & Thomson, Cheyenne, James A. Eddington, Jones, Eddington & Weaver, Torrington, and Richard A. Douglas, Scottsbluff, NE, for appellee.

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and URBIGKIT, J. (Retired).

CARDINE, Justice.

This appeal is from an order giving the appellee First National Bank's lien priority and awarding the Bank the proceeds from the sale of two vehicles. We must determine whether the sale of either or both of the vehicles was in the ordinary course of business and therefore the claim of the purchaser superior to the Bank's secured interest under Wyoming's Uniform Commercial Code.

We affirm in part and reverse in part.

Appellant raises these issues:

I. Does a purchaser in the ordinary course of business who purchases a motor vehicle from a car dealer purchase the motor vehicle free of a validly perfected security interest?

II. May a person place a lien on property that he does not legally own?

III. Was the plaintiff a third party beneficiary to the dissolution agreement between the defendant and Russ Surdez?

In contrast, appellee raises this issue:

Does the record contain support for the trial court's holding that appellee's perfected security interests in motor vehicles and proceeds were superior to the rights of appellant in those vehicles?

## FACTUAL BACKGROUND

Lee Franklin (appellant) entered into a partnership with Russ Surdez under which they operated a used car lot called Auto Brokers. Their short-lived partnership began on April 1, 1990, and ended on July 10, 1990. During the partnership the business purchased a 1989 Oldsmobile.

After termination of their partnership, Russ Surdez opened his own separate used car lot called "Wyoming Auto Rebuilders." Franklin continued to operate Auto Brokers. The partnership dissolution agreement provided that Surdez was to receive title to the 1989 Oldsmobile. Franklin refused to release the title to Surdez because he claimed that Surdez still owed debts to their former partnership.

When Surdez began his new business, he entered into a loan contract with the First National Bank of Morrill, Nebraska (appel-

lee). Under the Bank's financing agreement with Surdez, the Bank had a floor plan lien on the cars on Surdez's lot. The Bank also filed specific security interests in each individual car.

On November 27, 1990, about four months after their partnership was dissolved, Franklin bought two vehicles, a 1984 Bronco II and a 1985 Ford four-wheel drive pickup, from Wyoming Auto Rebuilders—the car lot Surdez now operated. Franklin testified that he did not know of the Bank's security interest in the Bronco when he purchased it from Surdez.

Surdez next filed for Chapter Seven bankruptcy. Franklin appeared at the bankruptcy creditor's meeting. Franklin talked with Surdez on the record about the Bronco sale. Franklin indicated that he was having trouble getting the title to the Bronco even though he had paid Surdez $3,000.00 for it. The Bank had possession of the title pursuant to the lien Surdez had given the Bank.

The Bank filed a replevin action against Franklin for the vehicles. The parties entered into a stipulation which permitted the Bank, after posting a replevin bond, to take possession of the vehicles. Franklin also consented to the Bank's selling of the vehicles with the proceeds to be retained and paid to the party entitled thereto. This suit concerns who is entitled to the proceeds of that sale.

After a trial, the district court held that the Bank was entitled to the proceeds from the sale of the vehicles. Franklin filed a timely notice of appeal from the district court's order.

## STANDARD OF REVIEW

In reviewing the district court's decision, we employ the following standard of review:

> This court presumes the district court's findings of fact are correct and will not disturb such findings on appeal unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. * * * To determine whether evidence present-

ed at trial was sufficient to support the judgment this court first of all gives deference to the trial court's determination because it was able to judge the demeanor of the witnesses. We then accept the evidence of the prevailing party as true and give that party the benefit of all favorable inferences that can fairly be drawn from its evidence, while disregarding conflicting evidence.

*Narans v. Paulsen,* 803 P.2d 358, 360 (Wyo.1990) (citations omitted).

In his brief, appellant admits that he paid no monies for the 1985 Ford pickup, and he claims no interest in that vehicle for purposes of this appeal. Therefore, only the Oldsmobile and Bronco are before us. Because the facts are unique to each vehicle and the legal issues vary, we address the legal issues as they relate to each car.

## THE 1989 OLDSMOBILE

Franklin and Surdez purchased the Oldsmobile during their partnership. The partnership dissolution agreement provided that Surdez would receive the Oldsmobile. When it came time to transfer the Oldsmobile title from the partnership to Surdez alone, Franklin refused to sign. Franklin contended that Surdez owed him money for partnership transactions that Surdez told him were paid but in fact were not paid.

Since he was unable to obtain Franklin's signature on the title, Surdez resorted to self help. Surdez's wife, Minnie Surdez, took the title to the Goshen County Clerk's Office. Under the clerk's supervision, Minnie Surdez crossed out the name on the title (Auto Brokers) and wrote in Wyoming Auto Rebuilders.

Franklin did not consent or know of the title alteration that Minnie Surdez had performed until later. Since Franklin was not receiving satisfaction for what he claimed he was owed, he too resorted to self help. Franklin physically seized the Oldsmobile when he found it parked with the keys in it.

Franklin contends that the Bank's lien on the Oldsmobile is not valid because Surdez placed a lien on property that he did not own. Franklin also argues that no legal

transfer of ownership took place from Auto Brokers to Surdez because Franklin did not sign the title, and Minnie Surdez improperly transferred the title without his consent.

Franklin cites W.S. 34.1–9–203(a)(iii) for the proposition that a person cannot use property they do not own as collateral and create a valid lien. While Franklin is correct in a general sense, the peculiar and hopefully not repeated facts in this case warrant further examination than simple application of the general statute Franklin cites.

With respect to the Oldsmobile, Franklin did not have ownership under the terms of the partnership dissolution agreement. It is true that Surdez, through his wife, accomplished an unauthorized title switch. However we agree with the district court that although the means of switching the paper title was improper, Surdez's ownership of the title was not. He was entitled to the Oldsmobile under the parties' prior agreement. The district court also found that, as a general partner, Surdez's winding up powers allowed him to sign the title over although he did so in an unauthorized fashion. We agree with the district court. Surdez did own the Oldsmobile for purposes of placing a valid lien on it; and his transfer of title, although unusual and not condoned by this court, was permissible under the partnership dissolution agreement and W.S. 17–13–609 (1989). *See also Schunk v. Thickman*, 436 P.2d 542, 546 (Wyo.1968). Since both parties resorted to self help, Franklin's claim of prejudice from the self help is unpersuasive. The district court found that the terms of the partnership dissolution agreement controlled. We agree with that determination.

Franklin argues that the Bank should not be allowed to step into Surdez's shoes and enforce the partnership dissolution agreement. We need not address this argument because the district court upheld the title transfer on the grounds of legitimate partnership winding up powers, not on the grounds of the Bank being an incidental beneficiary to the partnership dissolution agreement.

## THE 1984 FORD BRONCO

Surdez gave the Bank a security interest in the 1984 Ford Bronco. The Bank filed the security agreement and the financing statement with the Goshen County Clerk and thereby recorded its security interest. On October 30, 1990, the Goshen County Clerk's office issued a title for the 1984 Bronco to Wyoming Auto Rebuilders. The title noted the lien of appellee First National Bank of Morrill, Nebraska.

On November 27, 1990, Franklin bought the 1984 Ford Bronco from Surdez's Wyoming Auto Rebuilders. Franklin agreed to a $3,700.00 purchase price for the vehicle. Franklin paid Surdez $3,000.00, and they agreed that the remaining $700.00 would cancel a debt owed to Franklin.

In its replevin complaint, the Bank claimed that since Franklin's purchase of the Bronco was subsequent to the Bank's perfected lien and security interest, any interest Franklin could claim was subject to the Bank's prior lien and security interest. Franklin argued that purchasers of cars from car dealers take free of a Bank's security interest.

The district court found that the Bank's lien was prior and that the Bank was entitled to the proceeds from the sale of the Bronco. The district court relied on the motor vehicle registration code rather than on the Uniform Commercial Code. The district court noted a conflict between buyer-in-the-ordinary-course sections, W.S. 34.1–9–307 and 34.1–1–201(a)(ix), of the Uniform Commercial Code. Therefore, the district court looked to the Wyoming Motor Vehicle Registration Act, W.S. 31–2–103 (1989).

The court reasoned that the lien notation on the title should prevail over any purchase in the ordinary course of business. The district court order asked rhetorically: "Of what purpose are the requirements in this motor vehicle transfer provision if the lien or encumbrance is voided by a transfer 'in the regular course of business?'" Reliance upon the Motor Vehicle Registration Act rather than the Uniform Commercial Code was incorrect as a matter of law.

The Motor Vehicle Registration Act sets out the procedure for noting a lien on a title but does not resolve priority claims. *See* W.S. 31–2–103 (1989). The majority of courts which have considered whether their motor vehicle registration act applies instead of the Uniform Commercial Code have held that the Uniform Commercial Code governs priority questions. *North Carolina Nat'l Bank v. Robinson*, 78 N.C.App. 1, 336 S.E.2d 666, 672 (1985); *Cunningham v. Camelot Motors, Inc.*, 138 N.J.Super. 489, 351 A.2d 402, 405 (1975); *Correria v. Orlando Bank & Trust Co.*, 235 So.2d 20, 24 (Fla.App.1970); *Chrysler Credit Corp. v. Sharp*, 56 Misc.2d 261, 288 N.Y.S.2d 525, 529 (N.Y.Sup.1968); *Sterling Acceptance Co. v. Grimes*, 194 Pa.Super. 503, 168 A.2d 600, 602–03 (1961).

The Uniform Commercial Code promotes smooth commerce, and it makes more sense for it to cover these types of commercial transactions rather than motor vehicle registration acts which vary from state to state. Therefore, it was error to rely on the Motor Vehicle Registration Act as a basis for decision in this case.

## BUYER IN THE ORDINARY COURSE

The Bank contends that because Franklin and Surdez had previously been partners, the transactions between them should be looked at differently than other transactions which occur in the ordinary course of business. The Bank also contends that transactions they entered into should be viewed with skepticism because of Surdez's improper business practices. Testimony in the record describes Mr. Surdez as a "slick operator." Other testimony indicates that Mr. Surdez had deprived persons of property through fraud. However, the district court expressly found that Franklin was not a party to Surdez's duplicity, and we accept the court's resolution of these fact matters.

Franklin contends that he was a buyer in the ordinary course of business who is entitled to the protection of § 9–307 of the Uniform Commercial Code. Section 9–307 of Wyoming's Uniform Commercial Code provides:

(a) A buyer in ordinary course of business (section 34.1–1–201(a)) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

W.S. 34.1–9–307(a) (1991).

Based on § 9–307, appellant Franklin claims that he takes the Bronco free of the Bank's security interest. In response, appellee contends that Franklin acted in bad faith and was not a buyer in the ordinary course. Since Franklin is not a buyer in the ordinary course, the argument goes, he cannot claim the protection of § 9–307.

Both sides cite cases which involve other objects of commerce such as livestock and farm crops. We decline to rely on those cases. Several of those cases interpret § 9–306(2) rather than § 9–307. Section 9–307 expressly excludes farm products. The Uniform Commercial Code imposes a greater burden on the purchaser of farm products to check for existing liens. *First Nat'l Bank and Trust Co. v. Iowa Beef Processors, Inc.*, 626 F.2d 764, 768 (10th Cir.1988). *See also* Richard L. Epling, *Priorities Disputes in Motor Vehicles and in Other Certificated Goods*, 41 *The Business Lawyer* 361, 373 (1986). With farm products, buying in good faith does not automatically cut off a security interest as it does under § 9–307. *Iowa Beef Processors*, 626 F.2d at 768.

In *Cherry Creek Dodge, Inc. v. Carter*, 733 P.2d 1024 (Wyo.1987), we held that an innocent consumer's interest would cut off the interest of an unsecured dealer. That decision does not directly address the problem we have here. In this situation, unlike *Cherry Creek Dodge*, the creditor is secured and the buyer is a dealer in the same kind of business. *Cherry Creek Dodge*, 733 P.2d at 1026. Therefore, we examine additional case law interpreting § 9–307.

General case law supports the notion that a car buyer in the ordinary course takes free of a perfected security interest whether it is a security interest noted on

the title or a floor plan lien. *See e.g., North Carolina Nat'l Bank v. Robinson,* 78 N.C.App. 1, 336 S.E.2d 666, 670 (1985); *Whitworth v. Dodd,* 435 So.2d 1305, 1307 (Ala.Civ.App.1983); *Cunningham v. Camelot Motors, Inc.,* 351 A.2d 402; *Community Bank v. Jones,* 278 Or. 647, 566 P.2d 470, 488 (1977); *Correria v. Orlando Bank & Trust Co.,* 235 So.2d at 22; *Chrysler Credit Corp. v. Sharp,* 288 N.Y.S.2d at 533; *Sterling Acceptance Co. v. Grimes,* 168 A.2d at 603. *See also* Richard L. Epling, *supra* at 365–66, 374–75. The policy behind this rule is that a buyer in the ordinary course should not have to do a title search in order to purchase a car. When a car is on a lot for sale, a buyer in the ordinary course may rely upon the dealer's apparent authority to sell. *See e.g., Sterling Acceptance Co. v. Grimes,* 168 A.2d at 603; *Chrysler Credit Corp. v. Sharp,* 288 N.Y.S.2d at 533; *Cunningham v. Camelot Motors, Inc.,* 351 A.2d at 405; *Whitworth v. Dodd,* 435 So.2d at 1307.

■ In support of their position that Franklin was not a buyer in the ordinary course, the Bank argues that Franklin was himself a dealer and he would have known about the financing arrangement. Although the Bank's claim may be correct, it is also true that Franklin would not have known that Surdez was not remitting the proceeds to the Bank as the security agreement required. Mere knowledge of the type of financing likely to be in use would not defeat Franklin's status as a buyer in the ordinary course of business, even if such knowledge were clearly established. *Frank Davis Buick AMC–Jeep, Inc. v. First Alabama Bank of Huntsville, N.A.,* 423 So.2d 855, 858 (Ala.Civ.App.1982).

■ There is no support in the record for appellee's position that Franklin acted with specific knowledge that Surdez was going to violate the security agreement with respect to that sale. The district court specifically found that Franklin was not a party to Surdez's duplicity. In order to defeat Franklin's buyer-in-the-ordinary-course status, Franklin must have specifically known that the sale would violate the security agreement. *Frank Davis Buick,* 423 So.2d at 858–59. *See also First Nat'l Bank v. Atlanta Classic Cars, Inc.,* 184 Ga.App. 784, 363 S.E.2d 16, 18 (1987) (*citing* the 1972 Official Comment No. 2 to § 9–307 of the Uniform Commercial Code).

■ The evidence in the record supports the district court's finding that Franklin did not act with Surdez to violate the security agreement. Franklin's questions at the meeting of Surdez's creditors indicate that he did not expect to encounter any problems receiving the title.

Courts have refused to give buyer-in-the-ordinary-course protection when indicia of a phony or fraudulent sale appears in the record. For example, when a dealer obtained an incredibly good price and drove the cars off the lot at night after buying them in bulk, the court refused to give that party buyer-in-the-ordinary-course protection. *Community Bank v. Jones,* 566 P.2d at 488; *see also First Nat'l Bank and Trust Co. v. Ford Motor Credit Co.,* 646 P.2d 1057, 1061 (Kan.1982) (indicia of a phony sale included the cars remaining on the lot, not sold at fair market value, dealers double financing the cars in knowing violation of the security agreement). As the district court found, this case does not present facts similar to these as would indicate a fraudulent sale.

■ Also, Franklin's status as a used car dealer does not defeat his protection under § 9–307. Several courts have found that so long as the transaction was made in good faith, status as a dealer alone will not defeat a claim of good faith under § 9–307. *Associates Discount Corp. v. Rattan Chevrolet, Inc.,* 462 S.W.2d 546, 549 (Tex. 1970); *Frank Davis Buick AMC–Jeep, Inc. v. First Alabama Bank,* 423 So.2d 855; *Sherrock v. Commercial Credit Corp.,* 290 A.2d 648, 651 (Del.Super.1972).

■ Holding that Franklin is entitled to a portion of the proceeds from the Bronco sale makes the most sense practically and is most consistent with the Code. White and Summers, two noted authorities on the Uniform Commercial Code, state:

Although we have found no case which squarely holds that the rights of a pur-

chaser of a used car from a dealer are superior to those of a secured party who has recorded his security interest under a certificate of title act, the trend favors the purchaser. In this situation the purchaser's position is supported by sound technical and policy arguments. In the first place the misconduct of the dealers in these cases is normally more susceptible to control by the secured party than by a purchaser who has neither the leverage nor the opportunity to exercise control over a dealer. Secondly, the purchaser in such cases falls squarely within the class of persons section 9–307(1) is designed to protect.

James J. White & Robert S. Summers, *Uniform Commercial Code*, § 24–17, 1178 (3rd ed. 1988). We hold that Franklin was a buyer in the ordinary course of business when he gave Surdez $3,000.00 to purchase the Bronco.

However, Franklin is not a buyer in the ordinary course with respect to the $700.00 setoff for preexisting debt. The Code definition of buyer in the ordinary course is as follows:

(ix) "Buyer in the ordinary course of business" means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the good buys in the ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a preexisting contract for sale *but does not include a transfer* in bulk or as security for or *in total or partial satisfaction of a money debt.*

W.S. 34.1–1–201(a)(ix) (1991). This definition expressly excludes setoffs of preexisting debt. Commentators who have interpreted this definition have said that one of the conditions of being a buyer in the ordinary course of business and taking free of a prior perfected security interest is that the buyer

does not take his interest as security for or in total or partial satisfaction of a preexisting debt (that is, he must give some form of "new" value)[.]

James J. White & Robert S. Summers, *Uniform Commercial Code*, § 24–13, 1165 (3rd ed. 1988).

Setoffs for preexisting debt are expressly excluded because:

To permit a general creditor to extinguish a perfected security interest by "purchasing" some of the debtor's inventory in return for canceling the debt owed to it would eviscerate the priorities established by Article 9 and the safeguards accorded inventory financers with perfected security interests. That is why "buying" does not include transfers in satisfaction of a money debt.

*Walter E. Heller Western, Inc. v. Bohemia, Inc.*, 61 Or.App. 57, 655 P.2d 1073, 1077 (1982). Because it recognized the potential danger that allowing "buying" to include a setoff for a preexisting debt would present, the court in *Heller Western* would not allow buyer-in-the-ordinary-course status for a portion of a transaction that was a transfer in satisfaction of a preexisting debt. *Heller Western*, 655 P.2d at 1078. Franklin cannot be a buyer in ordinary course with respect to the $700.00. The issue then becomes whether the loss of buyer-in-the-ordinary-course status applies to the whole transaction or can be "fractionalized" with respect to specific portions of the transaction.

In *Heller Western*, the court of appeals found that the portion of the transaction that was for a preexisting debt would not nullify the buyer-in-the-ordinary-course status with respect to the whole transaction. *Heller Western*, 655 P.2d at 1078. The court found that the transaction could be fractionalized or divided for purposes of analyzing whether the buyer was a buyer in the ordinary course of business. *Heller Western*, 655 P.2d at 1078–79.

The court said that for the part of the transaction in which the buyer did in fact

give new value for the inventory purchased,

> the secured party's position is no different from what it would be with respect to any other buyer in the ordinary course of business: the secured party's debt can be paid off by the proceeds. If the proceeds are dissipated, or otherwise unavailable, when the secured creditor attempts to realize on its security, including proceeds from inventory, that is the risk that an inventory financer assumes as to all inventory sales: it is contemplated that inventory will be sold in order that the debt it secures can be paid off.

*Heller Western*, 655 P.2d at 1078.

The court also found that fractionalizing a transaction is the best route since "fractionalizing the transaction grants the protection of ORS 79.3070 [9-307] to good faith purchasers who pay virtually all of the price in cash but also forgive a minor debt." *Id.* That is exactly the situation we have here. Franklin paid $3,000.00, nearly all of the purchase price in cash. He forgave a minor debt, $700.00, at the same time. The analysis of the court in *Heller Western* is persuasive. We hold that Franklin is a buyer in the ordinary course for the $3,000.00 paid as new value and is not a buyer in the ordinary course for the $700.00 preexisting debt setoff.

*Heller Western* cites one case which had rejected fractionalizing a transaction. *Heller Western*, 655 P.2d at 1078 (*citing General Electric Credit Corp. v. R.A. Heintz Const. Co.*, 302 F.Supp. 958 (D.Or.1969)). The Oregon Court of Appeals rejected the rationale used in *General Electric* because it relied on the definition of buyer in the ordinary course from the Uniform Trust Receipts Act which preceded the UCC and because it relied on a provision from Article 2 of the UCC instead of Article 9 which governs this situation. *Heller Western*, 655 P.2d at 1078-79. We agree that fractionalizing balances the interest of the Code in not allowing preexisting debt setoffs to eviscerate security interests while at the same time allowing those who are deserving in rare situations to claim protection under § 9-307 to the extent they have

given new value. Fractionalizing transactions for purposes of analyzing a buyer-in-the-ordinary-course question strikes an appropriate balance between competing goals in the Uniform Commercial Code.

The Bank argues that the district court's decision should be affirmed because if Franklin owes more on the Bronco, the Bank would be entitled to collect Surdez's accounts receivable under W.S. 34.1-9-318(a) (1991). The record does not establish a balance remaining due on the Bronco. On the contrary, Franklin testified that he gave Surdez a check for the full $3,000.00 amount. The record shows that no balance on the Bronco remains. We therefore decline appellee's argument.

Since the $700.00 portion of the sale was to satisfy a preexisting debt, Franklin is not a buyer in the ordinary course with respect to that amount. We hold that Franklin was a buyer in the ordinary course with respect to the $3,000.00 he paid Surdez for the Bronco. The district court is reversed only with respect to the $3,000.00. Of the sum received by the Bank from the sale of the 1984 Ford Bronco, Franklin is awarded the first $3,000.00, plus interest.

## CONCLUSION

Surdez was entitled to the Oldsmobile under the terms of the partnership agreement. The district court was correct in finding that the Bank was entitled to the proceeds from the sale of the Oldsmobile. The district court was not correct in relying on provisions of the Wyoming Motor Vehicle Registration Act rather than the Wyoming Uniform Commercial Code in resolving which party was entitled to the proceeds from the Bronco. Therefore, the district court's judgment with respect to the Bronco proceeds is reversed. Franklin was a buyer in the ordinary course with respect to the $3,000.00 cash payment he made to Surdez, but he was not a buyer in the ordinary course with respect to the $700.00 he set off against a preexisting debt. Judgment should be entered in Franklin's favor for $3,000.00 of the sale proceeds from the 1984 Bronco plus interest. The

Bank is entitled to the remaining proceeds from the sale.

Affirmed in part, reversed in part, and remanded for entry of judgment consistent with this opinion.